WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

James L. Gagan,                    )
                                   )
              Plaintiff,           )      No. CIV 99-1427  PHX RCB
                                   )
         vs.                       )           O R D E R
                                   )
The Estate of Victor E.            )
Sharar, and James A. Monroe,       )
et al.,                            )
                                   )
              Defendants.          )
_____    )

        This matter is before the court on defendant James A. Monroe's

expedited motion to quash a Writ of General Execution issued on

August 25, 2006.  That Writ was issued to satisfy a nearly $1.7

million dollar judgment rendered in plaintiff James L. Gagan's

favor and against defendant Monroe, among others.  Pursuant to that

Writ, on September 25, 2006, the U.S. Marshal issued a "Notice of

. . . Sale" for real property located in Maricopa County, defendant

Monroe's home.  <u>See</u> Doc. 315, exh. A thereto.  Primarily because

the public auction of this property is scheduled for October 26,

2006, at 10:00 a.m., the court granted defendants' request for an

1    expedited hearing, which was held on October 13, 2006.  Doc. 316.

2    *Introduction*

3    This motion to quash is the latest in a long series of
4    attempts by defendant Monroe to thwart plaintiff's efforts to
5    enforce the judgment which plaintiff obtained against Monroe in
6    1994.  Although defendant frames his arguments in terms of
7    collateral estoppel and the Rooker-Feldman doctrine, this most
8    recent motion to quash is essentially a rehash of an argument which
9    this court has rejected at least twice before.  Namely, defendant
10   is once again arguing that this court's 2005 rulings that the
11   judgment was timely renewed, and thus enforceable, is at odds with
12   what he believes the state court decided, *i.e.* that the judgment is
13   not enforceable.  For the reasons set forth below, defendant's
14   arguments gain nothing by recasting them in terms of the
15   collateral estoppel and Rooker-Feldman doctrines.

16   *Background*

17   This action is not unfamiliar to this court.  In fact, prior
18   to filing the present motion to quash, defendant Monroe filed at
19   least two remarkably similar motions, both of which the court
20   denied.  See Doc. 317, exhs. 1 and 2 thereto.

21   Plaintiff obtained the judgment which is the subject of this
22   motion in the United States District Court for the Northern
23   District of Indiana on November 23, 1994.  On March 1, 1995,
24   plaintiff recorded that judgment in Maricopa County.  Less than a
25   month later, on March 28, 1995, in accordance with 28 U.S.C. §
26   1963, plaintiff registered the Indiana judgment by filing a
27   certified copy of that judgment in this district court.  Section
28   1963 provides in relevant part that "[a] judgment so registered

- 2 -

1  shall have the same effect as a judgment of the district court of
2  the district where registered and may be enforced in like manner."
3  Several days later, on March 31, 1995, plaintiff  re-recorded the
4  judgment in Maricopa County.  Then, on June 9, 2002, plaintiff "re-
5  filed the Indiana judgment . . . in th[is] District Court[.]"  Doc.
6  317, exh. 1 thereto at 2.

7  **_I.  Arizona Superior Court Action_**

8       In 1999, defendant Monroe's wife commenced an action in
9  Arizona Superior Court seeking a declaration that the "Gagan
10 Judgment created by filing the Indiana Judgment in the District
11 Court of Arizona and recording on March 31, 1995 [was] a 'wrongful
12 lien[.]'"  Doc. 318, exh. AA thereto at 2.  Eventually, the state
13 court dismissed Ms. Monroe's action.

14      As part of that wrongful lien action, defendant Monroe filed a
15 counterclaim seeking "a declaration that the judgment and judgment
16 lien [we]re unenforceable under Arizona law[.]"  Id. at 3, ¶ A.
17 Addressing that counterclaim, in a minute entry,  the Superior
18 Court found "invalid" plaintiff's "real property _lien_ arising out
19 of the November 23, 1994 [Indiana] judgment[.]  Doc. 313, exh. A
20 thereto at 1 (emphasis added).  In reaching that conclusion, the
21 Superior Court explained that in accordance with  ARIZ. REV. STAT.
22 ANN. § 33-964(A) (West 2000), upon recording, the judgment
23 "bec[a]me a lien for a period of five years from the date it [wa]s
24 given," _i.e._ until November  23, 1999.  Id.  Immediately thereafter
25 the Superior Court noted, "[t]he record is undisputed that the
26 judgment was not renewed until June 9, 2000, nearly . . . 7 . . .
27 months after it  expired."  Id.  Because "the record d[id] not
28 indicate that the judgment itself was renewed following its . . . 5

year expiration[,]" the Superior Court opined that plaintiff's "effort to renew the lien" by refiling the judgment in this District Court on June 9, 2000, was "of no moment." See id. (citations omitted).  The court concluded by explicitly finding "that [plaintiff's] real property *lien* arising out of the November 23, 1994 judgment from the Northern District Court of Indiana is *invalid*."  Id. (emphasis added).

In the Declaratory Judgment embodying that minute entry, the Superior Court unequivocally "f[ou]nd[] that [plaintiff] Gagan's "real property *lien* of March 1, 1995 and June 9, 2000[,] arising out of the recording of [his] November 23, 1994 [Indiana] judgment against [defendant] Monroe . . . was *not timely renewed* in accordance with the requirements of A.R.S. §12-1611, *et seq.,* and is therefore *invalid*."  Id., exh. B thereto at 2 (emphasis added) Consequently, the Superior Court "grant[ed] Monroe Declaratory Judgment that [plaintiff's] *lien* arising out of the recording of the November 23, 1994 [Indiana] judgment . . . is *invalid* and *unenforceable as a matter of law*."  Id. (emphasis added).

## II.  *Arizona Court of Appeals Decision*

Plaintiff Gagan appealed. Consistent with the Superior Court's Declaratory Judgment, as the Court of Appeals framed it, the issue on appeal was whether plaintiff's  "judgment *lien* against [defendant] Monroe was *invalid for failure to renew* it pursuant to . . . A.R.S. section 12-1611[.]"[1] Doc. 313, exh. C thereto at ¶1 (emphasis added).   The Court of Appeals addressed two narrow

---

[1]    This statute allows for renewal of judgments "by action thereon at any time within five years after the date of the judgment."  ARIZ. REV. STAT. ANN. § 12-1611 (West 2003).

1  issues:  (1) whether there was a justiciable issue as to the

2  validity of the lien before the trial court; and (2) the validity

3  of the "re-recorded" lien.  See id. at 9.  As to the former, the

4  Court rejected plaintiff's argument that "a justiciable issue as to

5  the validity of the lien did not exist and that the trial court

6  erred by ruling that the re-recorded lien was invalid."  Id. at 5,

7  ¶ 10.

8       Insofar as the "validity of the re-recorded lien" was

9  concerned, the Court of Appeals recognized that plaintiff was not

10  arguing "that the original lien remained valid[.]"  Id. at 9, ¶ 18.

11  "[N]or d[id] he argue that he properly renewed the lien by re-

12  recording it."  Id.  Instead, on appeal plaintiff "argue[d] that he

13  *created* an *entirely new valid lien* by re-recording the original

14  judgment, which he asserts remained valid under Indiana law and

15  A.R.S. § 12-549 [governing foreign judgments.]"  Id. (emphasis

16  added).  The Court of Appeals also rejected this argument

17  "conclud[ing] that [plaintiff's] re-recording of the original

18  judgment *did not create* a *new valid lien* under Arizona law."  Id.

19  at 14, ¶ 25 (emphasis added).  Thus the Court affirmed the Superior

20  Court's Declaratory Judgment.  See id.

21  ***III.  District Court Motions to Quash***

22       On September 13, 2004, defendant moved in this court to quash

23  the second writ of garnishment and summons, to quash the filing of

24  the foreign judgment, and to have this court take judicial notice

25  of the Arizona Court of Appeals Decision.  Doc.  217.

26  Approximately seven months later, on April 6, 2005, defendant

27  Monroe filed a "Motion to Quash the Writ of Garnishment Non-

28  Earnings) and *Second* Motion to Quash Filing of Foreign Judgment[.]"

1   Doc. 236 at 1 (emphasis added).  Again, Monroe asked this court to
2   take judicial notice of that 2003 Arizona Court of Appeals
3   decision.  See id. at 2.
4        On July 25, 2006, this court denied both of those motions to
5   quash.  (Doc. 317, exh. 1 thereto).  In so doing, the court
6   explicitly denied Monroe's request to take judicial notice of the
7   January 21, 2003, Arizona Court of Appeals decision.  Id. at 3.
8   Monroe had asked this court to take judicial notice of that
9   decision based upon his belief that the state court had found
10  plaintiff's judgment to be unenforceable.  This court gave two
11  reasons for denying Monroe's request to take judicial notice.
12  First, it faulted Monroe for not  identifying the specific facts of
13  which he wanted the court to take judicial notice. Second,
14  distinguishing between a judgment and a judgment lien, this court
15  found that the Arizona Court of Appeals held that plaintiff's
16  "judgment lien was unenforceable, *not* the judgment itself."  Id. at
17  3 (emphasis added).  In this regard, the court pointed out that the
18  Court of Appeals specifically noted that plaintiff did "not argue
19  that he renewed the *judgment*."  Id. (citation omitted) (emphasis
20  added).  In light of the foregoing, this court found plaintiff's
21  "interpretation" of the Court of Appeals decision "misplaced."  Id.
22  at 3-4.
23       Having declined to take judicial notice of the Court of
24  Appeals decision, this court went on to address defendant Monroes's
25  argument that plaintiff  "did not effectively renew the judgment in
26  accordance with Arizona law," thus rendering "the judgment
27  unenforceable."  Id. at 4 (citations omitted).  Under Arizona law,
28  there are two ways to renew a judgment.  The first is "by action

1  thereon at any time within five years after the date of the

2  judgment." ARIZ. REV. STAT. ANN. § 12-1611 (West 2003).  The second

3  way to renew a judgment is by affidavit.  See ARIZ. REV. STAT. ANN.

4  §12-1612 (West 2003).  Plaintiff admitted that he did not file a

5  renewal affidavit.  Instead, he argued that "he renewed the

6  judgment by bringing 'an action[,]'" as section 12-1611 allows.

7  Doc. 317, exh. 1 thereto at 4 (citations omitted).  The lack of a

8  statutorily or judicially created definition of "action" required

9  this court to  wrestle with the issue of how to define  "action"

10  for section 12-1611 purposes.  Not surprisingly, plaintiff argued

11  for a broad definition, whereas defendant argued that an "action"

12  under section 12-1611 refers strictly to the filing of a lawsuit.

13      Noting that the purpose of section 12-1611 is "to give notice

14  to the judgment debtor and other interested parties of the identity

15  of the judgment to be renewed[,]" this court held that "any action

16  upon a judgment" which gives such notice "and is within five years

17  of the date of the judgment was entered, may effectuate a renewal

18  of the judgment."  Id. at 6.  Thus, because plaintiff had "filed

19  numerous applications for writs of garnishment and motions in this

20  matter within five years of the date the judgment was entered, the

21  Court f[ound] that the judgment ha[d] been appropriately renewed

22  and is enforceable."  Id. at 607.  Further, this court found that

23  because "such renewal actions ha[d] occurred within the five years

24  prior to the contested writs of garnishment and motions," those

25  "writs and motions had the effect of timely renewal of the

26  judgment."  Id. at 7.  On the basis of the foregoing, the court

27  denied defendant's motions to quash.

28      Following those denials, plaintiff "filed a request for entry

- 7 -

1  of the contested judgement against [a] garnishee[.]" Id., exh. 2
2  thereto at 2 (citations omitted).  Defendant responded by filing a
3  motion for a stay pending appeal and for waiver of the
4  discretionary bond.  Defendant took the position that he could meet
5  the first criteria for the granting of a stay pending appeal, *i.e.*,
6  a showing of "likelihood of success on the merits of the appeal[,]"
7  because Arizona courts had decided that the judgment was not
8  enforceable under Arizona law.   Id. at 3.  As it had in connection
9  with his motions to quash, this court rejected that argument,
10 reiterating its view that "the Arizona Court of Appeals . . .
11 determined [plaintiff's] judgment lien to be unenforceable, *not* the
12 judgment itself."  Id. (emphasis added) (citation omitted).  The
13 court added that in any event its order denying defendant's motion
14 to quash the writs of garnishment was not an appealable order.  Id.
15 at 4.

16                       ***Summary of Arguments***

17     As defendant reads the Superior Court's minute entry, it "made
18 a *specific finding* that plaintiff's *Indiana judgment* is *no longer*
19 *enforceable in Arizona*[,]" a finding which defendant contends the
20 Court of Appeals did not disturb on appeal.  Doc. 313 at 3 and 10
21 (emphasis added).  Invoking collateral estoppel and the Rooker-
22 Feldman doctrines, defendant contends that this court "is precluded
23 from determining that the Indiana Judgment is enforceable, and more
24 specifically that th[at] . . . Judgment was timely renewed[.]" Id.
25 at 10.  "Collateral estoppel, or, . . . issue preclusion, means
26 simply that when an issue of ultimate fact has once been determined
27 by a valid and final judgment, that issue cannot again be litigated
28 between the same parties in any future lawsuit."  Schiro v. Farley,

1   510 U.S. 222, 232 (1994) (internal quotation marks and citation

2   omitted).  Rooker/Feldman "stands for the proposition that a

3   federal district court does not have subject matter jurisdiction to

4   hear a direct appeal from the final judgment of a state court,"

5   Manufactured Home Communities v. City of San Jose, 420 F.3d 1022,

6   1029 (9th Cir. 2005) (internal quotation marks and citation

7   omitted).  That is so because "[o]nly the Supreme Court has

8   original jurisdiction to review '[f]inal judgments or decrees

9   rendered by the highest court of a State in which a decision could

10  be had.'"  In re Sasson, 424 F.3d 864, 872 (9th Cir. 2005)(quoting

11  28 U.S.C. § 1257(a)), cert. denied, 126 S.Ct. 2890 (2006).

12      In addition to challenging the applicability of the collateral

13  estoppel and Rooker-Feldman doctrines, plaintiff responds that

14  "res judicata has been established in this [federal] court by way

15  of th[is] [court's] two [2005] Orders . . . regarding judgment

16  renewal and enforceability."  Doc. 317 at 6.  Thus plaintiff

17  reasons, if any preclusive effect should be given here, it is with

18  respect to this court's prior determination that the judgment is

19  enforceable.  Almost as an afterthought, plaintiff adds that

20  defendant cannot rely upon the Superior Court's minute entry to

21  disturb this court's prior 2005 orders because those orders are

22  "the law of th[e] case."  Id.

23                          ***Discussion***

24      The court will first address the Rooker-Feldman argument

25  because unlike the preclusion doctrines of collateral estoppel and

26  *res judicata*, Rooker-Feldman is jurisdictional.  See Sasson, 424

27  F.3d at 872; see also Exxon Mobil Corp. v. Saudi Basic Indus., 544

28  U.S. 280, 293 (2005) (citation omitted) ("Preclusion, of course, is

1    not a jurisdictional matter.").  Therefore, if  defendant Monroe

2    prevails on his <u>Rooker-Feldman</u> argument,  this court would be

3    divested of subject matter jurisdiction.

4    ***I.  Rooker-Feldman***

5         As noted above, "under what has come to be known as the

6    *Rooker-Feldman* doctrine,[2] lower federal courts are precluded from

7    exercising appellate jurisdiction over final state-court

8    judgments." <u>Lance</u>, 126 S.Ct. at 1201 (footnote added).  In <u>Lance</u>,

9    the Supreme Court's most recent pronouncement on <u>Rooker-Feldman</u>,

10   the Court reiterated its view that that doctrine is a "narrow" one,

11   "confined to 'cases brought by state-court losers complaining of

12   injuries caused by state-court judgments rendered before the

13   district court proceedings commenced and inviting district court

14   review and rejection of those judgments.'"  <u>Id.</u> (quoting <u>Exxon</u>, 544

15   U.S. at 283).  More succinctly, the Supreme Court in <u>Lance</u> stressed

16   that the <u>Rooker-Feldman</u> doctrine "applies only in *limited*

17   *circumstances*, . . . , where a party in effect seeks to take an

18   appeal of an unfavorable state-court decision to a lower federal

19   court."  <u>Id.</u> at 1202 (internal quotation marks and citation

20   omitted) (emphasis added).

21        Defendant interprets the Superior Court's minute entry as

22   holding that plaintiff's judgment is unenforceable.  From there

23   defendant goes on to argue that because that was a ruling "adverse"

24   to plaintiff, and plaintiff did not "pursue appellate review" of

25   _____

26        [2]

27        "The *Rooker-Feldman* doctrine takes its name from the only
     two cases in which [the Supreme Court] ha[s] applied this rule
     to find that a federal district court lacked jurisdiction."
28   <u>Lance v. Dennis</u>, 126 S.Ct. 1198, 1201 (2006).

- 10 -

1    that issue, <u>Rooker-Feldman</u> "bar[s] [plaintiff] from seeking a

2    review" of that ruling in this district court.  <u>See</u> Doc. 313 at 10.

3    Plaintiff counters that this <u>Rooker-Feldman</u> argument "misses the

4    point" because he is not "'appeal[ing]' the State Court ruling in

5    this Court."  Doc. 317 at 6.  The court agrees.

6         On the face of it, clearly plaintiff Gagan is *not* seeking a

7    review of the Arizona Superior Court's decision.  Rather, by

8    registering the Indiana judgment in this court, which is how this

9    proceeding began, and eventually obtaining a writ of general

10   execution, plaintiff is seeking to enforce a judgment which this

11   court has previously held is "enforceable[]" -- nothing more.  <u>See</u>

12   Doc. 317, exh. 1 thereto at 7.

13       Defendant Monroe tries to bring this case within the ambit of

14   <u>Rooker-Feldman</u> by asserting that under that doctrine this court

15   lacks subject matter jurisdiction because the issue of the validity

16   of the lien and the issue of the enforceability of the judgment are

17   "inextricably intertwined."  To be sure, the <u>Rooker-Feldman</u>

18   doctrine" prohibits a federal district court from . . .

19   adjudicat[ing] claims that are 'inextricably intertwined' with the

20   merits of a judgment rendered in a state court proceeding."  <u>G.C.</u>

21   <u>and K.B. Investments, Inc. v. Wilson</u>, 326 F.3d 1096, 1103 (9th Cir.

22   2003) (quoting <u>Feldman</u>, 460 U.S. at 483 n. 16).  This prohibition

23   against hearing an "inextricably intertwined" claim arises out of a

24   concern that "the District Court is in essence being called upon to

25   review the state court decision.'" <u>Id.</u>

26       Here, defendant Monroe asserts that the issues of the validity

27   of the lien and the enforceability of the judgment are

28   "inextricably intertwined" because if this court "allows

1   [plaintiff] to enforce the Indiana judgment by refusing to quash

2   the Writ of General Execution and Notice of Levy, it must

3   effectively overrule [the Superior Court's] un-appealed and

4   unambiguous decision which found the very same Indiana judgment to

5   be unenforceable in the State of Arizona."  Dco. 313 at 10.  To

6   support this argument defendant relies upon Pennzoil Co. v. Texaco

7   Inc., 481 U.S. 1 (1987), and Fontana Empire Center, LLC v. City of

8   Fontana, 307 F.3d 987 (9th Cir. 2002).

9        What defendant Monroe fails to take into account is that in

10  2003 the Ninth Circuit "clarifie[d] the narrow scope and

11  application" of Rooker-Feldman, Manufactured Home Communities, 420

12  F.3d at 1029, "and in so doing significantly limited [its] reach"

13  in terms of the "inextricably intertwined" element of that

14  doctrine.  See Lahey v. Contra Costa County Department of Children

15  and Family Services, No. C01-1075, 2004 WL 2055716, at *9 (N.D.Cal.

16  Sept. 2, 2004).  More specifically, in Noel v. Hall, 341 F.3d 1148

17  (9th Cir. 2003), the Ninth Circuit held that "[t]he 'inextricably

18  intertwined analysis of *Feldman* applies to defeat federal district

19  court subject matter jurisdiction *only* when a plaintiff's suit in

20  federal district court is at least in part a forbidden de facto

21  appeal of a state court judgment, *and* an issue in that federal suit

22  is 'inextricably intertwined' with an issue resolved by the state

23  court judicial decision from which the forbidden de facto appeal is

24  taken."  Id. at 1165 (emphasis added).  In so holding, the Noel

25  Court emphasized that it has "never held that when there are

26  simultaneous suits in state and federal court, in which related or

27  'inextricably intertwined' claims are being litigated, the federal

28  suit must be dismissed under *Rooker-Feldman*."  Id.  "Indeed," the

1   Court explained, it "could not so hold without violating the rule

2   that permits simultaneous state and federal suits involving not

3   only inextricably intertwined, but even *identical*, claims." Id.

4   The Noel Court concluded its "inextricably intertwined" discussion

5   by pointing out that "[t]he Supreme Court has repeatedly stated

6   that simultaneous state and federal litigation of *overlapping*, and

7   *even identical, issues* is an important feature of our federal

8   system," and it would "not interpret the *Rooker-Feldman* doctrine to

9   destroy that feature." Id. (citations omitted) (emphasis added).

10      As the foregoing demonstrates, after Noel "[t]he premise for

11  the operation of the 'inextricably intertwined' test . . . is that

12  the federal plaintiff is seeking to bring a forbidden de facto

13  appeal." Maldonado v. Harris, 370 F.3d 945, 950 (9th Cir. 2004)

14  (internal quotation marks and citation omitted).  A federal

15  plaintiff brings a "forbidden de facto appeal . . . when []he . . .

16  complains of a legal wrong allegedly committed by the state court,

17  and seeks relief from the judgment of that court." Noel, 341 F.3d

18  at 1163.  Plainly, the relief which plaintiff Gagan is seeking

19  (execution of a writ to enforce a foreign judgment) does not

20  constitute a "forbidden de facto appeal" because he "is not

21  alleging as a legal wrong an erroneous decision from the state

22  court." See Maldonado, 370 F.3d at 950 (citation omitted).

23  Instead, as noted earlier, plaintiff Gagan is attempting to enforce

24  a judgment which this court has previously held is enforceable.

25  Thus, despite defendant Monroe's assertion to the contrary, "the

26  'inextricably intertwined' test does not come into play here[]"

27  because "the premise" for its "operation," a "forbidden *de facto*

28  appeal," is missing.  See id.

- 13 -

1     The court finds defendant's <u>Rooker-Feldman</u> doctrine

2  unpersuasive for several other reasons.  First of all, the <u>Pennzoil</u>

3  language upon which defendant is relying is in a concurrence by

4  Justice Marshall and did not control the outcome there.  Second,

5  <u>Pennzoil</u> does not advance defendant's <u>Rooker-Feldman</u> argument any

6  because there, in an action challenging Texas procedures for

7  enforcement of judgments, the Supreme Court held that rather than

8  dismissing under <u>Rooker-Feldman</u>, the district court should have

9  abstained under <u>Younger v. Harris</u>, 401 U.S. 37 (1971).  <u>See</u>

10 <u>Pennzoil</u>, 481 U.S. at 6-10.  Both of these factors significantly

11 undermine defendant Monroe's reliance upon <u>Pennzoil</u>.

12    Nor does <u>Fontana</u>, another case which defendant cites, mandate

13 a different result here.  In fact, recognizing that the "<u>Fontana</u>

14 case can be misleading[,]" subsequently the Ninth Circuit in

15 <u>Maldonado</u> essentially cautioned litigants about reading <u>Fontana</u>

16 "out of context."  <u>See Maldonado</u>, 370 F.3d at 950.  Yet that is

17 precisely what defendant Monroe did.  For these reasons,

18 defendant's reliance upon <u>Pennzoil</u> and <u>Fontana</u> is misplaced.

19    In <u>Lance</u>, decided just last term, the Supreme Court repeated

20 its "warn[ing] that the lower courts have at times extended <u>Rooker-</u>

21 <u>Feldman</u> 'far beyond the contours of the <u>Rooker</u> and <u>Feldman</u> cases,

22 overriding Congress' conferral of federal-court jurisdiction

23 concurrent with jurisdiction exercised by state courts, and

24 superseding the ordinary application of preclusion law pursuant to

25 28 U.S.C. § 1738.'" <u>Lance</u>, 126 S.Ct. at 1201 (quoting <u>Exxon Mobil</u>,

26 544 U.S. at 283).  Adopting defendant Monroe's argument would be

27 just such an impermissible extension of the <u>Rooker-Feldman</u>

28 doctrine.  Furthermore, as the Supreme Court in <u>Exxon Mobil</u>

1    recognized, "neither <u>Rooker</u> nor <u>Feldman</u> supports the notion that

2    properly invoked concurrent jurisdiction vanishes if a state court

3    reaches judgment on the same or related question while the case

4    remains *sub judice* in federal court."  <u>Exxon Mobil</u>, 544 U.S. at

5    292.  Applying that reasoning to the present case, the Court of

6    Appeal's judgment on the "related question" of the validity of the

7    lien does not deprive this court of subject matter jurisdiction to

8    decide the judgment enforceability issue.

9         Finally, this court declines to find that <u>Rooker-Feldman</u> is a

10   bar to this enforcement proceeding because even if "plaintiff

11   present[]s some independent claims, albeit one that denies a legal

12   conclusion that a state court has reached in a case to which he was

13   a party . . . , then there is jurisdiction and state law determines

14   whether the defendant prevails under principles of preclusion."

15   <u>Id.</u> at 293 (internal quotation marks omitted) (citing, *inter alia*,

16   <u>Noel</u>, 341 F.3d at 1163-64).  In other words, "[e]ven though a

17   favorable decision in federal court [*may*] undermine the credibility

18   of the state court decision, the <u>Rooker-Feldman</u> doctrine, as

19   recently explained by the Ninth Circuit in <u>Noel</u>, does not bar

20   jurisdiction in this case."  <u>See</u> <u>Lahey</u>, 2004 WL 2055716, at *9.  In

21   short, because plaintiff Gagan does not allege any legal errors by

22   the Arizona state court as a basis for relief herein, <u>Rooker-</u>

23   <u>Feldman</u> does not bar this action.  Accordingly, the court DENIES

24   defendant's motion to quash the Writ of General Execution and

25   Notice of Levy issued on August 25, 2006 (Doc. 306), insofar as it

26   is premised upon the <u>Rooker-Feldman</u> doctrine.

27   ***II.  Collateral Estoppel***

28        Having determined that <u>Rooker-Feldman</u> does not apply here, the

- 15 -

1  issue becomes whether, as defendant urges, under Arizona collateral

2  estoppel law the "Court must honor [the Superior court's]

3  determination and must find that the Indiana Judgment is

4  unenforceable and must quash [plaintiff's] pending Writ of General

5  Execution and Notice of Levy."  Doc. 313 at 8.

6       Under the Full Faith and Credit statute, 28 U.S.C. § 1738, the

7  court must "give to a state-court judgment the same preclusive

8  effect as would be given that judgment under the law of the State

9  in which the judgment was rendered."  See  Migra v. Warren City

10  Sch. Dist., 465 U.S. 75, 81 (1984).  Thus, to determine the

11  preclusive effect, if any, of the state court decision this court

12  must look to Arizona collateral estoppel law.  To establish

13  collateral estoppel under Arizona law, the following five elements

14  must be shown:

15           "[T]he issue [wa]s actually litigated in
         the previous proceeding, there [wa]s a

16           full and fair opportunity to litigate
         the issue, resolution of such issue [wa]s

17           essential to the decision, there [wa]s a
         valid and final decision on the merits,

18           and there is a common identity of the parties.

19  Matter of Lockard, 884 F.2d 1171, 1175 (9th Cir. 1989) (citation

20  omitted).

21       As defendant reads the Superior Court's decision, "it

22  determined that [the Indiana judgment] was not timely renewed and

23  that it is not enforceable."  Doc. 313 at 5.  Premised upon that

24  reading, defendant contends that each of the elements of collateral

25  estoppel is "undeniably satisfied" here.  Id. at 6.  Hence,

26  defendant contends that collateral estoppel "preclude[s] [this

27  court] from determining that the Indiana Judgment is enforceable,

28  and more specifically that th[a]t . . . Judgment was timely

1  renewed[.]" Id. at 5.

2  Plaintiff counters that there is no need to address each of

3  the five collateral estoppel elements because defendant cannot

4  satisfy the first element given that "the issue in question" here,

5  enforceability of the judgment, was not "actually litigated" in

6  state court.  Doc. 317 at 5.  Defendant cannot make such a showing

7  because, as plaintiff reads the state court's  decisions, the issue

8  which was "actually litigated" there was whether plaintiff properly

9  renewed his judgment lien − *not* whether the judgment itself was

10  enforceable.

11  The court agrees with plaintiff that there is no need to

12  analyze each of the five collateral estoppel elements.  The court

13  has a different reason than does plaintiff for finding such an

14  analysis unnecessary, however.  Both parties overlook the fact that

15  under Arizona collateral estoppel law the issue which a party is

16  seeking to have relitigated must be the "*same[*,]" Pima County v.

17  Clear Channel Outdoor, Inc., 127 P.3d 64, 69 (Ariz. Ct. App. 2006)

18  (citation omitted), "precisely the same[,]" State v. Whelan, 91

19  P.3d 1011, 1015 (Az. Ct. App. 2004) (citing State v. Stauffer, 536

20  P.2d 1044, 1047(Ariz. 1975)), or"*identical*[,]" Better Homes

21  Construction, Inc. v. Goldwater, 53 P.3d 1139, 1143 (Ariz. Ct. App.

22  2002) (internal quotation marks and citation omitted)(emphasis

23  added), to  the issue actually addressed in the previous

24  litigation.

25  Here, the issue which defendant is seeking to preclude, the

26  enforceability of the judgment, is *not* the "same," "precisely the

27  same," or "identical" to the issue actually litigated in state

28  court.  Rather, as this court has explicitly found on two prior

occasions, the issue which was "actually litigated" in state court was whether the judgment *lien* was timely renewed, and not, as in this federal action, "whether the judgment was appropriately and timely renewed under Arizona law."  See Doc. 317, exh. 1 thereto at 3 (citation omitted)("[I]n the Court of Appeals['] opinion . .. , the Arizona court concluded that [plaintiff's] judgment lien was unenforceable, not the judgment itself."); and Doc. 317, exh. 2 thereto at 3 (same).

    The court continues to have a fundamental disagreement with defendant's reading of the state court decisions.  The Declaratory Judgment could not have been more clear: The issue which was "actually litigated" was the validity of the lien, and the Court of Appeals affirmed, agreeing that plaintiff's "re-recording of the original judgment did not create a new valid lien under Arizona law."  See Doc. 313, exh. C thereto at 14.  Distinguishing between a judgment and a judgment lien, is compatible with the notion that "judgment liens are a separate and independent creditor's remedy[.]"  See Boone v. Grier, 688 P.2d 1070, 1072 (Ariz. Ct. App. 1984).  Thus, "there is no legal requirement that there be a judgment lien prior to execution [of a judgment] pursuant to A.R.S. § 12-1553(1)."[3]  Id.  Of course, "[t]he judgment creditor who

---

[3]    That statute reads as follows:

> The party in whose favor a judgment is given,
> at any time within five years after entry of
> the judgment and within five years after any
> renewal of the judgment either by affidavit
> or by an action brought on it, may have
> a writ of execution or other process issued
> for its enforcement.

ARIZ. REV. STAT. ANN. § 12-1551(A) (West Supp. 2005).

- 18 -

1  attempts to execute against real property without a lien, . . . ,

2  is open to potential loss of his rights to a bona fide purchaser by

3  failing to record his interests in such property." Id. (citation

4  omitted).  But the fact remains that such a creditor may still seek

5  to execute his judgment against real property even in the absence

6  of a judgment lien.  For these reasons, the court finds no merit to

7  defendant's collateral estoppel argument and thus DENIES his motion

8  to quash the Writ of General Execution and Notice of Levy (Doc.

9  306) on that basis.

10      Because the court is denying defendant's motion to quash, and

11 in turn refusing to revisit the issue of the Indiana judgment's

12 enforceability, there is no need to address plaintiff's counter-

13 arguments that *res judicata* and the law of the case doctrines bar

14 this court from reconsidering that issue.

15 ***III.  Sanctions, Attorney's Fees and Costs***

16      Although, arguably, there may be some merit in the request by

17 plaintiff to make an application for an award of sanctions,

18 attorney's fees and costs, the court will deny that request at this

19 time.  Any future effort to re-litigate these issues will result in

20 a different ruling.

21                          ***Conclusion***

22      IT IS ORDERED that defendant James A. Monroe's motion to quash

23 the Writ of General Execution and Notice of Levy (Doc. 313) is

24 denied.  Rooker-Feldman is an extremely narrow jurisdictional

25 doctrine, which courts rarely invoke, and defendant has failed to

26 adequately support his argument that this court should rely upon

27 that doctrine and find that it has no subject matter jurisdiction.

28 Further, defendant is improperly relying upon the doctrine of

1  collateral estoppel to establish the preclusive effect of the state

2  court decisions because he cannot show that the identical issue of

3  the enforceability of the judgment was "actually litigated" in

4  state court – an element essential to establish preclusive effect

5  under Arizona law.

6        IT IS FURTHER ORDERED that plaintiff James L. Gagan's request

7  to make an application for an award of sanctions, attorney's fees

8  and costs is denied, without prejudice.

9        DATED this 17th day of October, 2006.

10

11

12  _____

13        Robert C. Broomfield
          Senior United States District Judge

14  Copies to counsel of record

15

16

17

18

19

20

21

22

23

24

25

26

27

28