**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| James L. Gagan,<br>c/o David G. Bray<br>Mariscal, Weeks, McIntyre<br>Friedlander, P.A.<br>2901 N. Central Ave.,<br>Suite 200<br>Phoenix, AZ 85012,<br><br>    Plaintiff/Judgment<br>    Creditor,<br><br>vs.<br><br>James A. Monroe<br>12880 East Mercer Lane<br>Scottsdale, AZ 85259,<br>et al.,<br><br>    Defendant/Judgment<br>    Debtor, | No. CIV 99-1427-PHX-RCB<br><br><br><br><br>O R D E R |

Currently pending before the court is a "Motion to Withdraw as Counsel for Defendant Monroe" filed by attorney, David H. Carmichael, on February 1, 2013 (Doc. 451). On February 11, 2013, this court ordered defendant James A. Monroe to file "[a] response, if any," to that motion by "**no later than fourteen (14) days** from the date of entry of this

order[,]" *i.e.,* by February 25, 2013. See Ord. (Doc. 458) at 2:5-7 (emphasis in original). To date, Mr. Monroe has not filed a response, timely or otherwise.

In the meantime, on February 22, 2013, plaintiff Gagan filed a motion for an order to show cause ("OSC"), "request[ing] that this Court issue a rule requiring James Monroe to appear and show cause, if any, why he should not be held in contempt of this Court, and if found to be in contempt that the Court punish him by fine, the costs incurred by Plaintiff to pursue this matter and for any other relief the Court deems appropriate." Mot. (Doc. 464) at 2:20-23. The basis for that motion is defendant Monroe's failure "to provide written discovery responses by February 18, 2013, in violation of this Court's prior Orders." Id. at 2:14-15, ¶ 6 (citations omitted).

On February 27, 2013, this court granted plaintiff's OSC, requiring Mr. Monroe to "appear before this Court on the 26th day of March, 2013 at 10:00 a.m. in Courtroom 606, Sandra Day O'Connor United States Courthouse, 401 West Washington, Phoenix, Arizona 85003[.]" Ord. (Doc. 466) at 1:23-25. Between the filing of plaintiff's OSC motion and the order granting that motion, on February 26, 2013, defendant Monroe himself, not through his attorney, provided written responses to plaintiff's post-judgment discovery demands. See Mot. (Doc. 470), exh. A thereto (Doc. 470-1) at 2.[1]

On March 26, 2013, plaintiff Gagan's counsel, David Bray,

---

[1] Defendant Monroe's responses are the subject of plaintiff's pending March 18, 2013, motion to compel.

-2-

1  and defendant Monroe's counsel, David Carmichael, appeared
2  before this court. However, defendant Monroe did not.  During
3  that hearing, both lawyers addressed, *inter alia*, the court's
4  previously stated concerns "as to whether Mr. Monroe has had
5  actual notice of: (1)  his attorney's motion to withdraw;
6  (2) the court's order permitting Mr. Monroe to file a
7  response to that motion; (3) plaintiff Gagan's motion for an
8  OSC; and (4) this court's order granting that OSC."  See
9  Ord. (Doc. 472) at 4:18-22.

After carefully considering all of submissions relating thereto, and the arguments of counsel, based upon the record as more fully developed during that hearing, as fully explained below, the court finds that Mr. Monroe had "actual notice" of each of the listed documents.

## I. Motion to Withdraw

### *A. Notice*

The court is satisfied that Mr. Monroe had actual notice of his attorney's motion to withdraw.  Two e-mails between Mr. Monroe and attorney Carmichael provide the strongest indication of that notice.[2]  Via e-mail, attorney Carmichael informed Mr. Monroe, among other things, that "[p]ursuant to [their] recent communications of the last weeks,"  he would be "filing a Motion to Withdraw as Counsel" in this action. Importantly, that e-mail recites that Mr. Monroe "advised" attorney Carmichael "that [he] consent[ed] to [Carmichael's] withdrawal and ha[d] indicated that [he] would be consulting

---

[2] Attorney Carmichael provided these e-mails to the court during the March 26, 2013 hearing.

with one of the attorneys whom [Mr. Carmichael] recommended to" Mr. Monroe.  Attorney Carmichael expressed that he would "very much appreciate [Mr. Monroe's] confirming that consent and agreement by reply to this email . . . at the earliest time possible."

Mr. Monroe's responding February 5, 2013, e-mail evinces that he had actual notice of attorney Carmichael's intent to file a motion to withdraw.  In that e-mail, Mr. Monroe explicitly informed attorney Carmichael, among other things, that he "understand[s] that [Mr. Carmichael] desire[s] to withdraw as [his] Counsel in the US District Court case in Arizona[.]"  E-mail from James Monroe to David Carmichael (Feb. 5, 2013 11:01 AM).  Moreover, Mr. Monroe wrote that he had "no objection to [Mr. Carmichael's] withdrawal[.]" Id. Mr. Monroe did condition such withdrawal upon attorney Carmichael's continued representation of Monroe in the "Homestead Exemption matter pending before . . . the Arizona Supreme Court in Arizona[.]"  Id.

In addition to receiving e-mail notice of his attorney's intent to file a motion to withdraw, the record shows that on February 1, 2013, a "COPY" of the actual motion, addressed to Mr. Monroe at "P.O. Box 5322 Scottsdale, AZ[] 85261[,]" was "deposited in the U.S. Mail[.]" See Mot. (Doc. 451) at 2. Mr. Carmichael's office mailed the withdrawal motion to that P.O. Box, as opposed to a residence, because that is the mailing address Monroe provided to Carmichael; and, "within the last probably year - at least," that is the "only physical mailing address" his office had for Mr. Monroe.  Court Recording

-4-

(March 26, 2013)[3] at 10:11:51 - 10:12:22 a.m.  This mailing is significant because "[i]t is generally accepted that '[s]ervice by mail is accomplished, for purposes of Rule 5,[4] when documents are placed in the hands of the United States Post Office or in a Post Office Box.'" Hernandez v. Gates, 2004 WL 291225, at *1 (C.D.Cal. Feb. 5, 2004) (quoting, *inter alia*, Theede v. United States Dept. of Labor, 172 F.3d 1262, 1266 (10th Cir. 1999); and 4B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1148 at 453 (3d ed. 2002)).  Additionally, it has been attorney Carmichael's experience that Mr. Monroe "always received" mail sent to that address.  Tr. at 10:12:25-27 a.m.

The strongest indication that Mr. Monroe had actual notice of this court's permitting him to file a response to the withdrawal motion is an e-mail from attorney Carmichael to

---

[3] The foregoing refers to the court's simultaneous recording of the March 26, 2013 proceeding.  For ease of reference, hereinafter the court will refer to this recording as "Tr.[,]" although no actual physical transcript exists.

[4] According to Fed.R.Civ.P. 5(b)(2)(C), "[a] paper is served under this rule by . . . mailing it to the person's last known address  – in which event service is complete upon mailing[.]"  Responding to this court's inquiry, "What is [Mr. Monroe's] last known *physical* address[,]" attorney Carmichael stated that it was "12880 East Mercer Lane, Scottsdale, Arizona." Tr. 10:09:42 a.m. - 10:10:03 a.m.  The basis for that answer was Mr. Monroe's October 30, 2012, testimony during an Arizona Superior Court matter.  Id. at 10:10:4-21 a.m.
Based upon the foregoing, arguably the East Mercer Lane address was Mr. Monroe's "last known address" within the meaning of Rule 5.  Under the particular circumstances of this case, however, the court declines to make such a finding.  Instead, it finds that insofar as attorney Carmichael and his office are concerned, when the motion to withdraw was mailed, Mr. Monroe's "last known address" was his Scottsdale P.O. Box.  That is because, as discussed above, that is the only mailing address Mr. Monroe provided to attorney Carmichael and, in accordance with Mr. Monroe's instructions, that is the only address Carmichael's office used for mailings to Mr. Monroe.  Id. at 10:10:29-42 a.m.

-5-

1  defendant Monroe.  The court's order was entered on 11:41 a.m.
2  MST. Ord. (Doc. 458) Notice of Electronic Filing ("NEF") at 1.
3  Within the next half hour, at 12:09 p.m., attorney Carmichael
4  e-mailed Mr. Monroe, attaching a copy of that order, adding,
5  "Let me know if there is something you want me to do to assist
6  you with a response if you want to make one."  E-mail from
7  David Carmichael to James Monroe (Feb. 11, 2013 12:09 PM).
8  This prompt e-mail is indicative of Mr. Carmichael's diligence
9  in keeping Mr. Monroe apprised of the status of this action.
10 Indeed, as Mr. Carmichael explained, because he is still
11 Monroe's counsel of record, every document which is served
12 upon Mr. Carmichael in that capacity, he, in turn, "serves"
13 upon Mr. Monroe via e-mail.  Tr. at 10:06:27-44 a.m.
14     The foregoing satisfies this court that defendant Monroe
15 had actual notice of attorney Carmichael's motion to withdraw,
16 as well as the court's order permitting Monroe to file a
17 response to that motion.

### B.  Merits

19     Given that notice finding, the court will turn to the
20 merits.  Before doing so, it is worth noting that the only
21 reasonable inference from Mr. Monroe's February 11, 2013, e-
22 mail, especially in the absence of any response to this
23 withdrawal motion, is that Mr. Monroe consents to the granting
24 of such relief, albeit  conditionally, as mentioned above.
25 Furthermore, although plaintiff Gagan does not oppose this
26 motion, he, too, wants a condition placed upon the granting of
27 such relief.  To avoid incurring process serving costs,
28 plaintiff wants the court to "order[]" defendant Monroe "to

provide . . . a physical address" to which pleadings can be mailed. Tr. at 10:28:32 a.m. – 10:28:49 a.m.

LRCiv 83.3(b) governs attorney withdrawal and "sets forth the technical requirements for withdrawing as counsel of record in the District Court of Arizona." Bohnert v. Burke, 2010 WL 5067695, at *1 (D.Ariz. Dec. 7, 2010). An attorney of record may not withdraw:

> in any pending action except by formal written order of the Court, supported by written application setting forth the reasons therefore together with the name, last known residence and last known telephone number of the client[.]

LRCiv 83.3(b). In addition where, as here, the motion to withdraw "does not bear the written approval of the client, it shall be made by motion and shall be served upon the client and all other parties or their attorneys." LRCiv 83.3(b)(2).

Pursuant to LRCiv 83.3(b), Mr. Carmichael's supporting "Certification" provides his client's name and "last known telephone number[.]" See Cert'n (Doc. 451-1) at 1:24-25. Although that Certification provides Monroe's "last known address[,]" *i.e.* the Scottsdale P.O. Box, Cert. (Doc. 451-1) at 1:23-24, it does not provide his "last known residence[,]" in accordance with LRCiv 83.3(b). The court can overlook that omission, chiefly because Mr. Monroe advised attorney Carmichael that he received mail at that P.O. Box, and that is how he wanted Mr. Carmichael to communicate with him. Tr. at 10:12:42 -55 a.m. Thus, while generally strict compliance with LRCiv 83.3(b) is preferable, under the particular circumstances herein, the court is willing to excuse the fact that in seeking withdrawal, attorney Carmichael did not

-7-

indicate his client's "last known residence."

A "written application" for attorney withdrawal also should "set[] forth the reasons therefore[.]" LRCiv 83.3(b). Attorney Carmichael's Certification is silent on that point. As discussed momentarily, however, those reasons are ample and became abundantly clear during the March 26, 2013 hearing. So, once again, under the particular circumstances of this case, the court will overlook this "technical" omission. See Bohnert, 2010 WL 5067695, at *1.

Insofar as service under LRCiv 83.3(b)(2) is concerned, as discussed with respect to notice, the court finds that defendant Monroe was served for purposes of that Rule. Cf. Hernandez v. Gates, 2004 WL 291225, at *1 (C.D.Cal. Feb. 5, 2004) (commenting that in the context of Fed.R.Civ.P. 5, "context plays an important role in determining whether adequate service has been effected in a given case[]"). Further, there is no dispute that "all other parties or their attorneys[]" were also served in accordance with that Rule. See LRCiv 83.3(b)(2).

Having addressed LRCiv 83.3(b)'s requirements, next, the court will address the broader issue of whether, in the exercise of its "discretion," it should grant attorney Carmichael's motion to withdraw. See Chaker v. Adams, 2012 WL 4848962, at *1 (S.D.Cal. Oct. 10, 2012) (citation omitted). "Factors that a district court should consider when ruling upon a motion to withdraw as counsel include: (1) the reasons why withdrawal is sought; (2) the prejudice withdrawal may cause to other litigants; (3) the harm withdrawal might cause

to the administration of justice; and (4) the degree to which withdrawal will delay the resolution of the case." Bohnert, 2010 WL 5067695, at *1 (citing, *inter alia*, In re Ryan, 2008 WL 4775108, at *3 (D.Or. Oct. 31, 2008)).

Whether viewed individually or collectively, these factors weigh heavily in favor of granting attorney Carmichael's withdrawal motion. The most compelling reason for allowing attorney withdrawal here is the erosion of the attorney-client relationship between Mr. Carmichael and defendant Monroe. There are several manifestations of this erosion. The first is that attorney Carmichael does not "have any idea at all" as to his client's whereabouts. Tr. at 10:29:57 - 10:30:07 a.m. He is not even certain whether or not defendant Monroe is in Arizona or elsewhere. See generally id. at 10:31:44 - 10:32:10 a.m.

Second, attorney Carmichael has not had a "face-to-face conversation with Mr. Monroe" for nearly four months. Id. at 10:15:21-27 a.m. The last such conversation was "probably . . . on October 30th [2013] - the day of the trial in [Arizona] Superior Court." Id. at 10:15:28-30 a.m. Third, attorney Carmichael has not spoken with or seen Mr. Monroe since mid-December, 2012. Id. at 10:16:30-45 a.m. Fourth, despite attorney Carmichael's efforts to "continue to urge [Mr. Monroe] to appear in court and do the things that are asked of him, [Monroe] has not responded to [Carmichael] in any way at all." Id. at 10:31:20-36 a.m.

Additional evidence of the erosion of the attorney-client relationship is found in a March 7, 2013, e-mail to Mr.

-9-

Monroe, with a copy to plaintiff's attorney, Mr. Bray. In that e-mail, attorney Carmichael explicitly did "no[t] object[]" to plaintiff's attorney "contacting [Mr. Monroe] directly." Mot. (Doc. 470), exh. B thereto (Doc. 470-2) at 2. And, indeed, wholly independent of attorney Carmichael, after receiving plaintiff's discovery demands via e-mail from attorney Carmichael, Mr. Monroe contacted plaintiff's attorney. See Tr. at 10:30:45 a.m. - 10:31:07 a.m. On February 26, 2013, plaintiff's attorney received, from defendant Monroe himself, his written responses to plaintiff's discovery demands. See Mot. (Doc. 470), exh. A thereto (Doc. 470-1) at 2; see also Tr. at 10:30:51 - 10:31:07 a.m. Attorney Carmichael "never" saw those responses, however, because Mr. Monroe did not provide him with a copy. Id. at 10:31:15 a.m. As attorney Carmichael put it, and the record demonstrates, he "is out of the loop with [Mr. Monroe]." Id. at 10:31:17-19 a.m.

Further, when Mr. Monroe has been directed to appear in this court, which has "happened at least twice[,]" attorney Carmichael has "urged" Monroe to appear, but he does not. Id. at 10:33:02-12 a.m. That is because, as attorney Carmichael candidly and bluntly put it, he "ha[s] no control[]" over defendant Monroe. Id. at 10:33:13-14 a.m. With equal candor, and as the record vividly shows, attorney Carmichael admitted that he has not gotten "cooperation" from defendant Monroe[;] "it's an impossible circumstance." Id. at 10:37:38-42 a.m. Notably, despite this lack of cooperation, for the past two years, attorney Carmichael has continued to represent

defendant Monroe *pro bono*. Id. at 10:37:26-29 a.m.

The "conflict of interest between" defendant Monroe and his attorney, Mr. Carmichael, also factors into the court's finding that there are justifiable reasons for allowing attorney Carmichael to withdraw as counsel here. E-mail from David Carmichael to James Monroe. Because Mr. Carmichael did not elaborate upon that conflict, it is not as significant as the overall erosion of the attorney-client relationship. Nonetheless, it is a consideration. All of the reasons outlined above justify granting attorney Carmichael's motion to withdraw.

As to the prejudice factor, during the hearing, plaintiff's attorney implied prejudice arising from his inability to definitively ascertain a "physical address" to which he can "mail pleadings" to defendant Monroe. Tr. at 10:28:41-48 a.m. That suggested prejudice does not outweigh the reasons discussed favoring withdrawal in this case. Undermining a finding of prejudice is the fact that when asked if anything sent to defendant Monroe at the East Mercer Lane address had been returned as undeliverable, plaintiff's attorney responded, "I don't believe that we've gotten return mail from that address[,]" or that he has received a notice of return or of a "bad address from the post office." Id. at 10:25:35-59 a.m.

Second, when attempting to serve post-judgment discovery requests upon either defendant Monroe or Ms. Sullivan[5] at the

---

[5] Ms. Sullivan is defendant Monroe's daughter and a garnishee/defendant in this action.

East Mercer Lane address, Mr. Monroe "answered the door and accepted service." Id. at 10:23:15-30 a.m.  It is plaintiff's understanding that the East Mercer Lane address is Ms. Sullivan's house, and that Mr. Monroe was living there with her.  Id. at 10:45-52 a.m.

Third, when considering possible prejudice, one of the sources for using the East Mercer Street address is plaintiff's most recent attorney, Mr. Bray.  Immediately upon filing his Notice of Appearance on September 10, 2012 (Doc. 393), attorney Bray filed six Applications for Writ of Garnishment.  The caption of each identifies "Defendant/Judgment Debtor[]" as "JAMES A. MONROE 12880 East Mercer Lane Scottsdale, AZ 85259[.]" See, e.g., Appl'n (Doc. 394) at 1.  The Summons and Writ[s] of Garnishment attached to each of those applications provides that the "last known addresses of the Defendant/Judgment Debtor [Monroe] are 1092 North 115th Street, Unit 2053, Scottsdale, AZ *and*" the East Mercer Lane address as recited in the caption.  See, e.g., Summons (Doc. 394-2) at 2, ¶ 4 (emphasis added).  Consistent with the foregoing, attorneys Carmichael and Bray both recalled that Mr. Monroe testified in Arizona Superior Court that his address is 12880 East Mercer Lane, Scottsdale, Arizona.

Finally, as is evident, attorneys Carmichael and Bray are at least equally well-positioned to ascertain defendant Monroe's last known "physical address."  Therefore, the court finds no merit to any implication that plaintiff Gagan will be prejudiced by allowing attorney Carmichael to withdraw as

defendant Monroe's counsel in this case.

As to the last two withdrawal factors, there has been no suggestion, and the court can conceive of none, how allowing attorney Carmichael to withdraw will harm the administration of justice or cause undue delay to the resolution of this case. Consequently, in the exercise of its discretion, for all of the reasons set forth above, the court hereby **GRANTS** attorney Carmichael's "Motion to Withdraw as Counsel for Defendant Monroe" (Doc. 451).

Because the court is granting that motion, unless and until defendant Monroe retains substitute counsel, he will be proceeding *pro se*. Defendant Monroe thus is advised that insofar as the court is concerned, his "last known address" is 12880 East Mercer Lane Scottsdale, Arizona 85259. See Fed.R.Civ.P. 5(b)(2)(C). It will therefore be incumbent upon defendant Monroe to notify the court and counsel of any change in that address. LRCiv 83.3(d) ("An . . . unrepresented party must file a notice of a[n] . . . address change[.]"); see also Khalafala-Khalafala v. U.S., 2012 WL 6783567, at *1 (D.Ariz. Dec. 7, 2012), (quoting Carey v. King, 856 F.2d 1439, 1441 (9th Cir. 1988)) ("A party, not the district court, bears the burden of keeping the court apprised of any changes in his mailing address."), adopted, 2013 WL 69176 (D.Ariz. Jan. 7, 2013). Until the court is otherwise notified in writing, with proof that a copy of such address change had been provided to plaintiff's counsel, David Bray, it will continue to provide copies of its orders to defendant Monroe by placing a copy of such orders in the United States mail, postage pre-paid, first

class to James A. Monroe 12880 East Mercer Lane, Scottsdale, Arizona 85259. Additionally, as to **this order only**, the court **ORDERS** the Clerk of the Court to also place a copy of this order in the United States mail, postage pre-paid, first class to James A. Monroe P.O. Box 5322, Scottsdale, Arizona 85261.

## II. *Motion/Order to Show Cause*

### *1. Notice*

A copy of plaintiff Gagan's OSC motion (Doc. 464) was "placed . . . in the U.S. mail, postage prepaid, first class to . . . James A. Monroe 12880 East Mercer Lane Scottsdale, Arizona 85259[.]" Mot. (Doc. 464) at 4:4-7. The present record convinces this court that insofar as plaintiff is concerned, that is defendant Monroe's "last known address." See Fed.R.Civ.P. 5(B)(2)(C). Thus, service was "complete upon mailing[.]" Id. Moreover, there is nothing in the record showing non-delivery, which is consistent with attorney Bray's statement that he does not believe any mail has been returned as undeliverable from that address.

Furthermore, because he is the attorney of record, Mr. Carmichael's practice had been to "serve" Mr. Monroe, via e-mail, with "every document" which has been served upon Mr. Carmichael. Tr. at 10:06:28-51 a.m. In accordance with that practice, Mr. Carmichael e-mailed a copy of the OSC to defendant Monroe, Tr. at 10:13:21-26 a.m.; but he does not remember whether he had "any indication from any communication" from Mr. Monroe indicating whether he "in fact" received, *inter alia*, the OSC. Id. at 10:14:42 a.m. - 10:15:53 a.m.

1  Even if the foregoing did not convince this court that
2 defendant Monroe had actual notice of plaintiff's OSC motion,
3 defendant Monroe's attorney of record, attorney Carmichael was
4 electronically served with that motion, as well as the court's
5 OSC.  Mot. (Doc. 464), NEF at  2; OSC (Doc. 466), NEF at 2.
6 Accordingly, the court deems defendant Monroe to have had
7 notice of both the OSC motion and the OSC itself through
8 service upon his attorney.  Cf. Fed.R.Civ.P. 5(b)(1) ("If a
9 party is represented by an attorney, service under this rule
10 must be made on the attorney unless the court orders service
11 on the party."); and N.R.R.B. v. Sequoia Dist. Council of
12 Carpenters, 568 F.2d 628, 633 (9th Cir. 1977) (service of
13 judgment on union's attorney gave union sufficient notice to
14 bind it to terms of the judgment such that "the union was
15 clearly bound to abide by it[]").

### 2. *Merits*

17  Pursuant to this court's order, defendant Monroe was
18 required to provide written discovery responses to plaintiff
19 by no later than February 18, 2013, as mentioned at the
20 outset.  Ord. (Doc. 457) at 2:14-15, ¶ (2). When defendant
21 Monroe did not respond by that date, four days later, on
22 February 22, 2013, plaintiff filed his OSC motion directed to
23 those tardy discovery responses.  In the meantime, defendant
24 Monroe did respond, but not until February 26, 2013  – eight
25 days late.  Mot. (Doc. 470), exh. A thereto (Doc. 471-1) at 2.
26  Given that relatively short delay, the court, in the
27 exercise of its discretion, declines to hold defendant Monroe
28 in contempt for the untimely filing of his written discovery

responses.  Furthermore, especially because the court is granting attorney Carmichael's motion to withdraw, defendant Monroe is advised that if he violates any further court orders, he proceeds at his peril.  Defendant Monroe is further advised that, upon the proper showing, any future violations of this court's orders could result in his being held in civil or criminal contempt.  Possible sanctions for such contempt are fines and imprisonment. At this time, however, the court **DENIES** the Order to Show Cause (Doc. 466).

### *Conclusion*

For all of these reasons, the court hereby:

(1) **GRANTS** attorney Carmichael's Motion to Withdraw as Counsel for defendant James A. Monroe (Doc. 451);

(2) **DENIES** the Order to Show (Doc. 466); and

(3) **ORDERS** the Clerk of the Court to place a copy of this order in the United States mail, postage prepaid, first class to defendant James A. Monroe 12880 East Mercer Lane, Scottsdale, Arizona 85259 **and** to defendant James A. Monroe P.O. Box 5322, Scottsdale, Arizona 85261.

DATED this 1st day of April, 2013.

_____
Robert C. Broomfield
Senior United States District Judge

Copies to counsel of record; James A. Monroe (12880 East Mercer Lane, Scottsdale, Arizona 85259 and P.O. Box 5322, Scottsdale, Arizona 85261); and Kimberly Sullivan (12880 East Mercer Lane, Scottsdale, Arizona 85259).