1   WO

2

3

4

5                    **IN THE UNITED STATES DISTRICT COURT**

6                        **FOR THE DISTRICT OF ARIZONA**

7

8   James L Gagan,                              No. CV-99-01427-PHX-RCB

9                    Plaintiff,                          **O R D E R**

10          v.

11  Victor E Sharar, et al.,

12                    Defendants.

13

14          Almost twenty years ago, in 1994, plaintiff James L. Gagan obtained a roughly

15  $1.7 million dollar judgment against defendant James Monroe, among others, in the

16  United States District Court for the Northern District of Indiana ("the NDI judgment").

17  On March 28, 1995, the plaintiff timely registered that judgment in this court pursuant to

18  28 U.S.C. § 1963 ("the Arizona registered judgment").  Since then, plaintiff Gagan has

19  been vigorously pursuing collection efforts with respect to that judgment.    Currently

20  pending before the court is a motion by defendant Monroe[1] to dismiss for lack of subject

21  matter jurisdiction because the Arizona registered judgment is no longer enforceable in

22  that plaintiff Gagan did not properly renew it in accordance with Arizona law.  Mot.

23  _____

24          [1]      La Junta Daniels, Kimberley Sullivan, Adam Salene, Turtle Communications, Inc.,
25  Latekidi Group, LLC,  and W. Lance Webb, are all defendants in the closely related action of Gagan v.
    Monroe, No. CV-13-1113-PHX-RCB ("Gagan II").  They all purport to join in defendant Monroe's
26  motion to dismiss, despite the fact that none are defendants herein, and Ms. Sullivan is simply a
    garnishee.  See Joinders (Docs. 498 and 500) ; and Joinder (Doc. 27 – No. CV-13-1113-PHX-RCB).
27  Because the Gagan II defendants are not defendants in this action, such joinder is unnecessary and of no
    consequence.    Perhaps joinder would have been appropriate had Gagan II been consolidated with the
    present action, but it was not.  The Gagan II defendants did seek a transfer, but not seek consolidation.
28  See Ord. (Doc. 33 – No. CV-13-1113-PHX-RCB).  Accordingly, the court deems this motion to dismiss
    as being brought strictly on behalf of defendant Monroe.

1  (Doc. 494) at 5:9 (emphasis omitted).

2  *Background*

3  Plaintiff Gagan's collection activities have spawned much interrelated litigation in

4  this court and in Arizona state courts.  During the pendency of this action, the court has

5  been involved with another equally contentious action to enforce a judgment registered

6  pursuant to section 1963, Fidelity Nat'l Fin. Inc. v. Friedman, No. CV 03-1222-PHX-

7  RCB.  Fidelity, too, has spawned much litigation, including Fidelity Nat'l Fin. Inc. v.

8  Friedman, 402 Fed.Appx. 194 (9th Cir. 2010) ("Fidelity IV"), and Fidelity Nat'l Fin. Inc.

9  v. Friedman, 225 Ariz. 307, 238 P.3d 118 (2010) ("Fidelity III"), which are the crux of

10  the defendant's motion to dismiss.  Given the parties' familiarity with the protracted and

11  rather tortured history of both actions, only a brief recitation of the history of each is

12  necessary to frame the parties' arguments herein.[2]

13  *I.  First Arizona State Court Action*

14  In 1999, Mr. Monroe's then-wife commenced an action against Mr. Gagan in

15  Superior Court of Arizona in Maricopa County ("Superior Court of Arizona").  She

16  alleged that the Arizona registered judgment created a wrongful lien against real

17  property, located in Scottsdale, Arizona, which she and Monroe owned.  As part of that

18  action,  Mr. Monroe, a co-defendant, "filed a [c]ounterclaim for declaratory relief

19  contending that the judgment lien recorded in Maricopa County by . . . Gagan against the

20  real property interests of Monroe [wa]s invalid and unenforceable for failure to comply

21  with the requirements of" Arizona's renewal statutes. Mot., exh. 4 thereto (Doc. 494-4)

22  at 2:25-3:3.  In 2002, the Superior Court of Arizona found in favor of Monroe, declaring

23  that the NDI judgment was "invalid and unenforceable as a matter of law[]" because it

24  "was not timely renewed in accordance with" Arizona's renewal statutes.  Id. at 3:10 and

25  3:7.  Gagan appealed to the Arizona Court of Appeals and in 2003 it affirmed the

26  judgment in Monroe's favor.  See id., exh. 5 (Doc. 494-5) thereto.

27

28  [2]    The court is aware of the fraudulent transfer allegations which are the subject of Gagan
II, but it disagrees with the plaintiff that such allegations have any bearing on the issue currently before
this court.

## II.  United States District Court - District of Arizona Action

Several years later, on July 26, 2005, this court denied defendant Monroe's motions to quash writs of garnishment and the filing of the NDI judgment.  Then, as now, the primary issue before the court was whether plaintiff Gagan properly renewed the Arizona registered judgment in accordance with A.R.S. § 12-1611.  That statute allows for a judgment to "be renewed by action thereon at any time within five years after the date of the judgment."  A.R.S. § 12-1611.  In 2005, this court opined that "[o]ne of the purposes of [that statute] is to give notice to the judgment debtor and other interested parties of the identity of the judgment to be renewed."  Ord. (Doc. 241) at 6:13-16 (citing Weltsch v. O'Brien, 25 Ariz.App. 59, 53 (App. 1975)).  Finding that plaintiff's "numerous applications for writs of garnishment and motions in this matter within five years of the date the judgment was entered[]" provided the requisite notice, this court held that the Arizona registered judgment "ha[d] been appropriately renewed and [wa]s enforceable."  Id. at 6:26-28; and at 7:1.

Approximately a year later, in August 2006, a writ of general execution was issued authorizing the United States Marshal to sell defendant Monroe's Scottsdale real property as partial satisfaction of the Arizona registered judgment.  Doc. 306.  Adhering to its view of judgment renewal based upon collection activities, in October 2006,  this court denied defendant Monroe's motion to quash that writ of general execution.  See Ord. (Doc. 321).  In November 2006, defendant Monroe's real property was sold at public auction to plaintiff Gagan's lawyer at the time.  See Doc. 341.  Later, defendant Monroe and one of his daughters, Kimberly Monroe Pirtle,[3] were evicted from that property.

## III.  Second Arizona State Court Action

After being evicted, in August 2007, defendant Monroe and Ms. Pirtle filed an action in the Superior Court of Arizona.  One form of relief which they sought was "a judgment declaring that the NDI judgment was not enforceable and the subsequent sale

---

[3] Ms. Pirtle has gone by various names; this appears to be the name she was using at the time of eviction.

of the property was void[.]"  Monroe v. Gagan, 2011 WL 2555736, at *3, ¶ 10 (Ct.App. June 28, 2010).[4]  In moving for partial summary judgment, plaintiff Monroe argued that the Arizona Court of Appeals decision in the first state court action "that the NDI judgment was unenforceable was binding on the [trial] court [in that second state court action] and that the doctrine of res judicata precluded further litigation on issues he had raised in his cross-claim and counterclaim against Gagan."  Id. at *3, ¶ 11.

Rejecting Monroe's argument, the trial court "concur[red]" with this court's finding "that the NDI judgment had been renewed pursuant to A.R.S. §  12-1611; that the judgment was enforceable, . . . ; and that the sale of the property to Gagan was valid."  Id. at *3, ¶ 13.  As a result, the trial court "entered a final judgment denying Monroe's motion for partial summary judgment and dismissing [his] complaint in its entirety."  Id. (internal quotation marks omitted).

Mr. Monroe raised a host of issues on appeal in Division One of the Arizona Court of Appeals, including issue preclusion.  As germane here, Mr. Monroe argued that Mr. Gagan was "preclude[d] [from] relitigating the issue of [the] enforceability of the [Arizona registered judgment] in th[at] second state court action because the issue was fully litigated and finally resolved in the first state court action."  Id. at *4, ¶ 14.  As indicated above, the trial court in Monroe gave preclusive effect to this court's findings that because plaintiff Gagan had filed numerous applications for writs of garnishment and motions within the five years of the date of entry of the judgment, he had renewed the Arizona registered judgment in accordance with A.R.S. § 12-1611.  See id. at *2, ¶ 7 (internal quotation marks omitted).  Affirming, the Arizona Court of Appeals held that "the issues determined in the federal court proceeding, which were fully and fairly litigated, even if incorrectly decided, could not be relitigated in state court."  Id. at *6, ¶ 22 (citing Montana v. United States, 440 U.S. 147, 162 (1979)) (footnotes omitted).

---

[4]    Even though Monroe "does not create legal precedent[,]" Monroe, 2011 WL 2555736 (emphasis omitted),  it  may be cited "for the purpose of establishing the defense of res judicata, collateral estoppel or the law of the case[.]"  See Ariz. R. Supreme Court 111(c); ARCAP 28(c); Ariz. R.Crim. P. 31.24.  In accordance with those Rules, the court is discussing Monroe because it is the foundation of plaintiff Gagan's res judicata arguments, as will be seen.  See id

### IV.  Fidelity Litigation

Continuing to adhere to its view, first expressed in this action in 2005, that collection activities are tantamount to an action on the judgment for purposes of renewal under A.R.S. § 12-1611, in <u>Fidelity Nat'l Fin. Inc. v. Friedman</u>, 2008 WL 3049988 (D.Ariz. Aug. 1, 2008) ("<u>Fidelity I</u>"), this court denied the judgment debtors' motion to quash a certification of judgment registered pursuant to 28 U.S.C. § 1963.  On appeal, the Ninth Circuit certified two questions to the Arizona Supreme Court - only one of which is pertinent now.  That is, the question of whether "collection activities . . . taken within Arizona, renew a judgment previously registered in Arizona[.]"  <u>Fidelity Nat'l Fin. Inc. v. Friedman</u>, 602 F.3d 1121, 1124 (9th Cir. 2010) ("<u>Fidelity II</u>")

Answering that question in the negative, the Arizona Supreme Court explained that "a party must bring a 'specific form of suit—the common law action on a judgment[,]' . . . 'not simply an action in some way related to the earlier judgment[.]'" <u>Fidelity Nat'l Fin. Inc. v. Friedman</u>, 855 F.Supp.2d 948, 952 (D.Ariz. 2012) ("<u>Fidelity V</u>") (quoting <u>Fidelity III</u>, 225 Ariz. at 310).  "Fidelity's Arizona collection efforts were not 'a common law action on the 2002 judgment[,]' the Supreme Court reasoned, because those 'efforts were attempts to collect upon the 2002 judgment, not to renew it.'"  <u>Id.</u> at 952-953 (quoting <u>Fidelity III</u>, 238 P.3d at 123 (citation omitted)).  "Adopting the answers of the Arizona Supreme Court, the Ninth Circuit held that because 'Fidelity did not file a common law action for renewal on the 2002 judgment within five years of its entry, the judgment expired by 2008.'"  <u>Id.</u> at 953 (quoting <u>Fidelity IV</u>, 402 Fed.Appx. at 196 (citation omitted)).  Accordingly, the Ninth Circuit reversed <u>Fidelity I</u>, leaving the issues of whether Fidelity "successfully renewed the judgment by affidavit . . . and whether its 2007 registration of the final California judgment also renewed the judgment[]" for this court to resolve in the first instance.  <u>Fidelity IV</u>, 402 Fed. Appx. at 196.

On remand, this court granted the judgment debtors' motion for a "[r]uling [c]onsistent with [t]he Ninth Circuit [m]andate" in <u>Fidelity IV</u>.  <u>Fidelity V</u>, 855 F.Supp.2d at 979.  Implicit in the grant of such relief was this court's recognition that, as the Ninth Circuit found in <u>Fidelity IV</u>, the Arizona registered judgment at issue could not

be renewed by collection activities.

### *Discussion*

Defendant Monroe argues that this court no longer has subject matter jurisdiction because the Arizona registered judgment is unenforceable given the plaintiff's failure to properly renew it in accordance with Arizona law.  Notwithstanding this court's earlier holdings that under Arizona law the plaintiff's collection activities were sufficient to renew the Arizona registered judgment, the defendant points out that since 2010, the law has been to the contrary:  collection activities do not suffice to renew a judgment in Arizona.  Plaintiff Gagan counters that the issue of collection activities as renewal "was raised, litigated and addressed by the Arizona Court of Appeals."  Resp. (Doc. 507) at 5:18-19 (emphasis omitted).  Starting from that premise, plaintiff Gagan argues that the doctrines of collateral estoppel, res judicata[5] and Rooker - Feldman[6] bar this motion; and, in any event, it is untimely.

Before examining the parties' respective arguments, some clarification is necessary with respect to the purported bases for the defendant's motion.  Defendant Monroe unequivocally states that he is moving to "dismiss this case for lack of subject matter jurisdiction[] . . ."[p]ursuant to 28 U.S.C. § 1332 [and] Rule 12(h)(3)[.]"  Mot. (Doc. 494) at 1:16-19.  The defendant's reliance upon Rule 12(h)(3) is readily apparent because it requires dismissal of an action if  the court  "determines at any time that it lacks subject-matter jurisdiction[.]"  Fed.R.Civ.P. 12(h)(3) (emphasis added).

---

[5]  "The preclusive effect of a judgment is defined by claim preclusion and issue preclusion, which are collectively referred to as 'res judicata[,]'" an appellation which this court adopts herein.  See Taylor v. Sturgell, 553 U.S. 880, 892, 128 S.Ct. 2161, 171 L.Ed.2d 155 (2008).  Thus, although the parties refer to "collateral estoppel" and "res judicata," in keeping with the practice of the Supreme Court and the Ninth Circuit in recent years, this court will use the terms "issue preclusion" rather than "collateral estoppel, and "claim preclusion" rather than "res judicata."  See Syverson v. Int'l Bus. Machs. Corp., 472 F.3d 1072, 1078 n. 8 (9th Cir. 2007).

[6]  That "doctrine takes its name from two Supreme Court cases:  Rooker v. Fidelity Trust Co., 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923) and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983)."  Carmona v. Carmona, 603 F.3d 1041, 1050 (9th Cir. 2003).

1    Defendant Monroe's reliance upon section 1332 as a basis for dismissal is

2 puzzling, though.  That statute details the circumstances under which district courts have

3 original jurisdiction based upon diversity of citizenship.  This action had its genesis,

4 however, not by filing a civil complaint alleging diversity jurisdiction, but by filing a

5 "Certification of Judgment for Registration in Another District" in accordance with 28

6 U.S.C. § 1963.  Therefore, not surprisingly, there is nothing on the face of that

7 Certification or upon any of the attachments thereto pertaining to the parties' citizenship.

8 Likewise, and also not surprisingly, there is no mention in the defendant's motion of the

9 parties' citizenship.  Consequently, the defendant's reliance upon 28 U.S.C. § 1332 as a

10 basis for dismissal is unfounded.  See Caruso v. Perlow, 440 F.Supp.2d 117, 119

11 (D.Conn. 2006) (emphasis in original) ("[T]he Court fails to see, and [the defendant]

12 neither explore[d] nor explain[ed], how it can exercise diversity jurisdiction where no

13 civil action has ever been filed[.]")  With that clarification, the court will consider this

14 motion to dismiss for lack of subject matter jurisdiction in accordance with Rule 12(h)(3).

15 ***I.  Subject Matter Jurisdiction***

16        ***A.  Governing Legal Standard***

17    "Presumptively, federal courts are without jurisdiction over civil actions[.]"

18 Harrison v. Howmedica Osteonics Corp., 2008 WL 615886, at *1 (D.Ariz. Mar. 3, 2008)

19 (citing Kokken v. Guardian Life Ins. Co., 511 U.S. 375, 377, 114 S.Ct. 1673, 1677, 128

20 L.Ed.2d 391 (1989)).  Further, it is well-settled that "[t]he burden of establishing subject

21 matter jurisdiction rests on the party asserting that the court has jurisdiction."  In re

22 Wilshire Courtyard, 729 F.3d 1279, 1284 (9th Cir.  2013) (citing  McNutt v. GM

23 Acceptance Corp., 298 U.S. 178, 182–83, 56 S.Ct. 780, 80 L.Ed. 1135 (1936)).

24 Therefore, where, as here, the defendant is challenging subject matter jurisdiction, the

25 burden is on plaintiff Gagan to prove the existence of such jurisdiction.  See Miller v.

26 Wright, 705 F.3d 919, 923 (9th Cir. 2013) (internal quotations and citation omitted)

27 ("Once challenged, the party asserting subject matter jurisdiction has the burden of

28 proving its existence.")

1

2      **_B.  Rooker - Feldman_**

3          Plaintiff Gagan is invoking the <u>Rooker</u> – <u>Feldman</u> doctrine to argue that this court

4      lacks subject matter jurisdiction to entertain the defendant's motion to dismiss.   "The

5      *Rooker – Feldman* doctrine instructs that federal district courts are without jurisdiction to

6      hear direct appeals from the judgments of state courts."  <u>Cooper v. Ramos</u>, 704 F.3d 772,

7      777 (9th Cir. 2012) (footnote added).   Federal district courts lack subject matter

8      jurisdiction over such appeals because "Congress, in 28 U.S.C. §  1257, vests the United

9      States Supreme Court, not the lower federal courts, with appellate jurisdiction over state

10     court judgments."  <u>Id.</u> (citing <u>Lance v. Dennis</u>, 546 U.S. 459, 463, 126 S.Ct. 1198, 163

11     L.Ed.2d 1059 (2006) (per curiam)).

12         The <u>Rooker</u> - <u>Feldman</u> "doctrine forbids a losing party in state court from filing

13     suit in federal district court complaining of an injury caused by a state court judgment,

14     and seeking federal court review and rejection of that judgment."  <u>Bell v. City of Boise</u>,

15     709 F.3d 890, 897 (9th Cir.  2013) (citing <u>Skinner v. Switzer</u>, 562 U.S. ----, 131 S.Ct.

16     1289, 1297, 179 L.Ed.2d 233 (2011)).  "To determine whether the *Rooker – Feldman* bar

17     is applicable, a district court first must determine whether the action contains a forbidden

18     de facto appeal of a state court decision."  <u>Id.</u>  (citation and footnote omitted).  "A de

19     facto appeal exists when 'a federal plaintiff asserts as a legal wrong an allegedly

20     erroneous decision by a state court, and seeks relief from a state court judgment based on

21     that decision.'"  <u>Id.</u>  (quoting <u>Noel v. Hall</u>, 341 F.3d 1148, 1164 (9th Cir. 2003)).  If the

22     action does "*not* contain a forbidden de facto appeal, the *Rooker – Feldman* inquiry

23     ends."  <u>Id.</u>  (citation omitted) (emphasis in original).

24         "[R]ecognizing that the Supreme Court has been very sparing in its invocation of

25     the [<u>Rooker</u> – <u>Feldman</u>] doctrine," the Ninth Circuit has been, as must this court, "careful

26     not to sweep too broadly[]" in terms of applying that doctrine.  <u>See</u> <u>Cooper</u>, 704 F.3d at

27     778 (citation omitted).  As a result, that "doctrine does not preclude a plaintiff from

28     bringing an 'independent claim' that, though similar or even identical to issues aired in

       state court, was not the subject of a previous judgment by the state court."  <u>Id.</u>  (quoting

1    Skinner, 131 S.Ct. at 1297).  Thus, "[i]f a federal plaintiff 'present[s] some independent

2    claim, albeit one that denies a legal conclusion that a state court has reached in a case to

3    which he was a party . . . , then there is jurisdiction and state law determines whether the

4    defendant prevails under principles of preclusion."  Exxon Mobil Corp. v. Saudi Basic

5    Industries Corp. 544 U.S. 280, 293, 125 S.Ct. 1517, 161 L.Ed.23 454 (2005) (internal

6    quotation marks and citations omitted).  That is because "neither *Rooker* nor *Feldman*

7    supports the notion that properly invoked concurrent jurisdiction vanishes if a state court

8    reaches judgment on the same or a related question while the case remains sub *judice* in a

9    federal court."  Id. at 292, 125 S.Ct. 1517.  Succinctly put, "[w]hen there is parallel state

10   and federal litigation, *Rooker – Feldman* is not triggered simply by the entry of judgment

11   in state court."  Id.  Yet, as will be seen, that seems to be plaintiff Gagan's mistaken

12   assumption.

13        Although not framed in precisely this way, plaintiff Gagan contends that the

14   defendant's motion to dismiss is a "de facto appeal" of the Arizona Court of Appeal's

15   Monroe decision, 2011 WL 2555736.  As the plaintiff interprets Monroe, it "rejected the

16   *Fidelity* argument originally asserted by [the] Defendant[]" on this motion, *i.e.*, that

17   collection activities are not sufficient to renew a judgment pursuant to Arizona's renewal

18   statutes.  See Resp. (Doc. 507) at 8:21.  Based upon that reading of Monroe, with no

19   analysis, plaintiff Gagan characterizes the defendant's motion to dismiss as an "invitation

20   for this court to review and reject that Arizona state court determination" in violation of

21   the Rooker - Feldman doctrine.  Id. at 8:22-23.

22        Similarly bereft of analysis, the defendant retorts that this court's 2006 Rooker -

23   Feldman analysis "equally applies to Gagan's current arguments[.]"  Reply (Doc. 510) at

24   7:19-20.  Therefore, defendant Monroe strongly urges this court to conclude, as it did

25   previously, that "Rooker-Feldman does not bar this action."  Id. at 8:6-8 (internal

26   quotation marks and citation omitted).  The court so concludes but, necessarily, for

27   different reasons than it did previously.

28        At every turn, there are flaws in plaintiff Gagan's argument that Rooker –

- 9 -

1   Feldman "divests this Court of jurisdiction" to entertain the defendant's dismissal motion.

2   See Resp. (Doc. 507) at 8:23-24.  Perhaps the most fundamental flaw is that, as earlier

3   noted, Monroe expressly states that it "does not create legal precedent and may not be

4   cited except as authorized by" various Arizona court rules.   See Monroe, 2011 WL

5   2555736 (emphases omitted).   Moreover, as also earlier noted,  Monroe may be cited for

6   only a few limited purposes, but establishing that the Rooker – Feldman doctrine is a

7   jurisdictional bar is not among them.  See n. 4, supra.

8           In addition to not being legal precedent, plaintiff Gagan's reliance upon Monroe is

9   unfounded because the defendant's motion to dismiss contains none of the hallmarks of a

10   forbidden de facto appeal.  First, it is patently obvious that defendant Monroe is not a

11   "federal plaintiff[]."  See Bell, 709 F.3d at 897 (internal quotations and citation omitted).

12   Second, contrary to what plaintiff Gagan suggests, the defendant is not "assert[ing] as a

13   legal wrong an allegedly erroneous decision by [the] state court[]" in Monroe.  See id.

14   Rather, the primary basis for the defendant's motion is that in light of Fidelity IV, 402

15   Fed.Appx. 194, which he claims is an "intervening decision" which "must be given

16   effect[,]" this court must revisit its prior ruling that the Arizona registered judgment was

17   renewed through plaintiff Gagan's collection activities.  See Reply (Doc. 510) at 10:18.

18   Thus, the asserted "legal wrong" of which the defendant complains is allowing the

19   plaintiff to continue to enforce the Arizona registered judgment, when it is no longer

20   enforceable because it was not renewed in accordance with Arizona law.  Moreover, that

21   wrong is based upon "an allegedly erroneous decision" by this federal court,  i.e.,

22   allowing renewal based upon collection activities; it is not based upon an allegedly

23   erroneous decision by the Monroe state court.

24           Third, the defendant is not "seek[ing] relief from the [Monroe] state court

25   judgment itself."  See id.  Rather, the defendant is seeking dismissal of this federal court

26   action for lack of subject matter jurisdiction.  Therefore, because defendant Monroe is not

27   "seek[ing] an 'undoing' of the prior state court judgment[]" in Monroe, Rooker –

28   Feldman does not preclude this court's consideration of his motion to dismiss.  See Al-

Mansur v. Gross, 2013 WL 3157919, at *5 (N.D.Cal. June 20, 2013) (quoting Bianchi v Rylaarsdam, 334 F.3d 895, 900 (9th Cir. 2003)); see also Vasquez v. Rackauckas, 734 F.3d 1025, 1036 (9th Cir. 2013) (internal quotation marks and citation omitted) (plaintiffs' lawsuit not a forbidden de facto appeal under Rooker – Feldman where they did not "present . . . any challenge to the terms of the [state court] Order, nor d[id] they otherwise allege [] a legal error by the Superior Court[]"). Succinctly put, "[w]ithout a direct challenge to a state court's factual or legal conclusion," the defendant Monroe's motion to dismiss "is not a forbidden de facto appeal, and *Rooker - Feldman* is inapplicable." See Bell, 709 F.3d at 897 (citations omitted).

There is a temporal aspect to application of the Rooker - Feldman doctrine which also is missing here. That doctrine is "narrow . . . confined to 'cases brought by state-court losers complaining of injuries caused by state-court judgments *rendered before* the district court proceedings commenced and inviting district court review and rejection of those judgments.'" Lance, 546 U.S. at 464, 126 S.Ct. 1198 (quoting Exxon Mobil, 544 U.S. at 284, 125 S.Ct. 1517) (emphasis added); see also West. v. State Farm Mut. Auto. Ins. Co., 2011 WL 2559966 (D.Mont. June 28, 2011) ("[W]here the federal action is commenced prior to the entry of a judgment in a parallel state court action, '*Rooker-Feldman* is not triggered simply by the entry of judgment in state court.'") (quoting Exxon Mobil, 544 U.S. at 292, 125 S.Ct. 1517), adopted by, 2011 WL 2961626 (D.Mont. Jul 20, 2011), aff'd on other grounds, 489 Fed.Appx. 153 (9th Cir. 2012). The NDI judgment was registered in this court in 1995, well before the 2011 Arizona state court decision in Monroe, which is the basis for plaintiff Gagan's Rooker - Feldman argument. Thus, timing is another defect in plaintiff Gagan's reliance upon Rooker – Feldman. See Crowe v. Gogineni, 2012 WL 6203124, at *14 (E.D.Cal. Dec. 12, 2012) (Rooker – Feldman not a bar where, *inter alia*, the plaintiff filed his federal action before the dismissal of the state court action), adopted by, 2013 WL 1499429 (E.D.Cal. April 11, 2013).

As just shown, plaintiff Gagan has not met his burden of establishing that Rooker

- 11 -

– <u>Feldman</u> is a jurisdictional bar to this motion.  There is one additional shortcoming in plaintiff Gagan's invocation of the <u>Rooker</u> – <u>Feldman</u> doctrine.  He misapprehends the <u>Monroe</u> court's treatment of <u>Fidelity II</u>.  As the plaintiff construes <u>Monroe</u>, that court "<u>rejected</u> the *Fidelity* argument[,]" Resp. (Doc. 507) at 8:22 (emphasis added), *i.e.*, that collection activities  do not constitute an action on a judgment under A.R.S. § 12–1611, and thus are not sufficient to renew a judgment thereunder.

Even a cursory reading of <u>Monroe</u> demonstrates, however, that that court's analysis focused on whether the trial court properly gave preclusive effect to this federal court's earlier findings that plaintiff Gagan's collection activities, conducted within five years of the date of entry of the judgment, renewed the judgment in accordance with Arizona law.  Only after rejecting plaintiff Monroe's argument that the trial court erred in that regard did the <u>Monroe</u> court even mention <u>Fidelity III</u>.  The <u>Monroe</u> court began by "not[ing]" that in 2010 the Arizona Supreme Court "held that 'collection activities' to satisfy a judgment did not constitute an action on a judgment under A.R.S. §§ 12–1611 and 12–1551 and did not renew the judgment; rather, renewal by action required a 'common law action on a judgment, which replaced the original judgment with a new judgment in the amount then owed.'"  <u>Monroe</u>, 2011 WL 2555736, at *6, ¶ 23 (quoting <u>Fidelity II</u>, 225 Ariz. 307, 311, ¶¶ [sic] 24).

The <u>Monroe</u> court did not concern itself, however, with the merits of that holding because it was looking at <u>Fidelity III</u> strictly in the context of the issue preclusion.  In that narrow context, the <u>Monroe</u> court reasoned that <u>Fidelity III</u> "did not constitute a significant, intervening change of controlling . . . legal principles that triggers applying an exception to issue preclusion."  <u>Id.</u> (internal quotation marks and citations omitted).  Pointing out that prior to <u>Fidelity III</u>, "the applicable law was unsettled[,] " the <u>Monroe</u> court opined that that 2010 decision  "did not change any previously 'controlling legal principles.'"  <u>Id.</u> (citation omitted).  Based upon the foregoing, the <u>Monroe</u> court agreed that the trial court properly gave preclusive effect to this court's prior rulings that collection activities are tantamount to renewing a judgment by action pursuant to A.R.S.

§ 12-1611. Accordingly, despite what plaintiff Gagan asserts, the <u>Monroe</u> court did not "reject" the so-called "*Fidelity* argument[,]" because, quite simply, it had no reason to address the merits of that argument. <u>See</u> Resp. (Doc. 507) at 8:21.

In arguing that the <u>Rooker</u> – <u>Feldman</u> doctrine defeats this court's subject matter jurisdiction, plaintiff Gagan is not taking into account that that doctrine "is not simply preclusion by another name." <u>See</u> <u>Lance</u>, 546 U.S. at 466, 126 S.Ct. 1198. "That doctrine applies only in limited circumstances," not shown by plaintiff Gagan, "where a party in effect seeks to take an appeal of an unfavorable state-court decision to a lower federal court." <u>See</u> <u>id.</u> Declining to adopt plaintiff Gagan's argument that <u>Rooker</u> – <u>Feldman</u> is a jurisdictional bar here, the court will next consider his argument that the defendant's motion is not timely.

### *C.  Timeliness*

Plaintiff Gagan argues that the defendant's motion to dismiss for lack of subject matter jurisdiction is "barred" as untimely. Resp. (Doc. 507) at 1 (emphasis omitted). In making this argument, the plaintiff points to the minutes of a hearing held before this court on May 30, 2013. At that time, insofar as the court was concerned, defendant Monroe was not represented by counsel, but the court did allow attorney Hull to appear on his behalf on that date. Mot. (Doc. 494), exh. 9 thereto (Doc. 494-9) at 2. During that hearing, the court ordered that "defendant Monroe shall have thirty (30) days from [May 30, 2013] in which to file a motion challenging this court's jurisdiction, based on the purported invalidity of the underlying judgment[.]" <u>Id.</u> at 2. Defendant Monroe, after retaining attorney Hull, did not file this motion to dismiss for lack of subject matter jurisdiction until October 24, 2013 -- roughly four months after the court ordered time frame.

The court does not look favorably upon defendant Monroe's seeming disregard of its prior order. At the same time, however, the court cannot ignore the well-established principle that "a court may raise the question of subject matter jurisdiction, *sua sponte*, *at any time* during the pendency of the action, even on appeal." <u>See</u> <u>Nevada v. Bank of</u>

America Corp., 672 F.3d 661,  673 (9th Cir. 2012) (internal quotation marks and citation omitted) (emphasis added); see also Fed.R.Civ.P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").  In light of the foregoing, the court must address the merits of defendant Monroe's motion to dismiss, despite its being filed outside the court ordered time frame.

Having found that Rooker – Feldman is not a jurisdictional bar to the defendant's motion to dismiss, and that it must address the issue of subject matter jurisdiction despite the timing of this motion, the next issue is whether, as plaintiff Gagan contends, the doctrines of issue preclusion or claim preclusion, or both, bar this motion.

### D.  "Issue Preclusion"

"'Collateral estoppel, or issue preclusion, means simply that when an issue of ultimate fact has once been determined by a valid and final judgment that issue cannot again be litigated between the same parties in any future lawsuit.'"  Wilson v. Belleque, 554 F.3d 816, 830 (9th Cir. 2009) (quoting inter alia Santamaria v. Horsley, 133 F.3d 1242, 1244-45 (9th Cir. 1998)).  "It precludes relitigation of both issues of law and issues of fact."  Pool Water Products v. Olin Corp., 258 F.3d 1024, 1031 (9th Cir. 2001) (citation omitted).  As plaintiff Gagan accurately notes, "[t]he Federal Full Faith and Credit statute, 28 U.S.C. § 1738, requires federal courts to 'give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered.'"  Gonzales v. California Department of Corrections, 739 F.3d 1226, 1230 (9th Cir.  2014) (quoting Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 81, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984)).  As the court construes the plaintiff's response, Monroe, 2011 WL 2555736 (Ct.App.), is the sole basis for his issue preclusion argument.[7]  Therefore, the court must look to Arizona issue preclusion law.

---

[7]    The plaintiff's response is somewhat ambiguous in terms of precisely which case he is claiming should be given preclusive effect here.  At one point, he refers to a 2010 Arizona Court of Appeals Fidelity case.  See Resp. (Doc. 507) at 7:10-11 (emphasis added) (Defendant "fails to inform the court that the Fidelity case and its impact was litigated in 2010 and 2011 before the Arizona Court of Appeals.")  To be sure, in 2010, Fidelity was litigated before several different courts. The court is unaware of, and the plaintiff did not cite to, any Fidelity case which was litigated in 2010 before the Arizona Court of Appeals, however.  Therefore, the court presumes that plaintiff Gagan's reference to a

1   In Arizona "issue preclusion[] applies when [1] an issue was actually litigated in a

2   previous proceeding, [2] there was a full and fair opportunity to litigate the issue,

3   [3] resolution of the issue was essential to the decision, [4] a valid and final decision on

4   the merits was entered, and [5] there is a common identity of the parties." Hullett v.

5   Cousin, 204 Ariz. 292, 298, 63 P.3d 1029, 1034-35 (Ariz. 2003) (en banc) (citation

6   omitted) (numbering added).   Plaintiff Gagan, as "[t]he party seeking to assert [issue

7   preclusion][,] bears the burden of establishing the requisite elements." Kajander v. City

8   of Phoenix, 2010 WL 2573003, at *2 (D.Ariz. June 22, 2010) (citing State Comp. Fund v.

9   Yellow Cab Co. of Phoenix, 197 Ariz. 120,  124, 3 P.3d 1040, 1044 (Ct.App. 1999)).

10   As plaintiff Gagan reads Monroe, 2011 WL 2555736, the Arizona Court of

11   Appeals held that a judgment can be renewed through collection activities under Arizona

12   law.  Based upon that reading, the plaintiff contends that defendant Monroe cannot, as he

13   is seeking to do, re-litigate that issue in his motion to dismiss.  Defendant Monroe retorts

14   that the "subject matter jurisdiction issue" now before this court was "not litigated in the

15   lower court action" upon which the plaintiff is relying.  Reply (Doc. 510) at 9:2-3.  In

16   addition, he argues that the intervening change in law exception to issue preclusion

17   applies here.

18   2010 Fidelity Arizona Court of Appeals case was unintended.

19   Likewise, presumably plaintiff Gagan's reference to an "**unpublished** *Fidelity* decision" was

20   unintended.  See id. at 7:12 (emphasis added).  The plaintiff claims that "[c]ollateral estoppel bars
Defendant from re-litigating the impact if any, of the **unpublished** *Fidelity* decision[.]" Id. at 7:11-12

21   (emphasis added).  The plaintiff offers the following rationale for that assertion:

22   [T]he issue was litigated in the Arizona Court of Appeals; the parties
to the matter were Defendant and Gagan; the Arizona Court of Appeals

23   resolved the issue presented by the *Fidelity* case in order to determine that
the judgment was enforceable and summary judgment on that issue was appropriate;

24   and the judgment was not appealed to the Arizona Supreme Court and is final.
Id. at 7:13-17.

25   

26   Because Monroe "does not create any legal precedent," and is only available through a Westlaw
citation, Monroe, 2011 WL 2555736, evidently when referring to "the unpublished *Fidelity* decision[,]"

27   plaintiff Gagan actually meant Monroe.  See Resp. (Doc. 507) at 7:12.  Otherwise plaintiff's rationale
would make no sense.  For example, obviously, the parties to the unpublished *Fidelity* decision" were not,
as in Monroe, defendant Monroe and plaintiff Gagan.  Thus, the only logical construction of plaintiff's

28   response is that Monroe is the basis for his issue preclusion argument, not the Ninth Circuit's unpublished
Fidelity decision.

- 15 -

1          *1.  "Actually Litigated"*

2          The first element of issue preclusion under Arizona law is whether the "issue was

3   actually litigated in the previous proceeding[.]"[8]  Hullett, 204 Ariz. at 298, 63 P.3d at

4   1035 (citation omitted).   In Arizona, "an issue is 'actually litigated' in the previous

5   proceeding when it 'is properly raised by the pleadings or otherwise, is submitted for

6   determination, *and is determined* by a court of competent jurisdiction.'"   In re Bailey,

7   2013 WL 1342726, at *5 (Bkrtcy.D.Mont. April 2, 2013) (emphasis added) (quoting  In

8   re Child, 486 B.R. at 173) (*citing*, *inter alia*, Chaney Bldg Co. v. Tucson, 148 Ariz. 571,

9   573, 716 P.2d 28, 30, *citing* Restatement (Second) of Judgments, Section 27, cmt. d.

10  ("When an issue is properly raised, by the pleadings or otherwise, and is submitted for

11  determination, and is determined, the issue is actually litigated within the meaning of this

12  section.")).  Plaintiff Gagan can satisfy some but not all aspects of this "actually litigated"

13  element.

14          Based upon the record before it, and giving plaintiff Gagan some latitude, the

15  court will assume *arguendo* that he has shown that the collection activities as renewal

16  issue was "properly raised" and "submitted for determination" to the Monroe Court.  See

17  id.  To support the former assumption, the court is relying upon the following excerpt

18  from Monroe's "Opening Brief" to the Arizona Court of Appeals, recited in plaintiff's

19  response:

20                  In 2010, the Ninth Circuit Court of Appeals certified
21                  questions to the Supreme Court.  In *Fidelity* [*III*]. . . ,
22                   the Supreme Court answered the certified
                    questions ruling that collection activities such
23                  as writs of garnishment, taken in Arizona, do not

24          _____

25          [8]        "[T]here is some inconsistency and overlap . . . with the state and federal cases applying
    Arizona issue preclusion law[.]  Child v. Foxboro Ranch Estates, LLC (In re Child), 486 B.R. 168, 173
26  (9th Cir. BAP 2013).  There, the Court astutely observed, that in addition to requiring that "the issue or
    fact to be litigated was actually litigated in a previous suit," one line of cases expressly includes the
27  additional element "that the party against whom the doctrine is to be invoked actually did litigate it[,]"
    whereas another line of cases omits that additional element.  See id. at 173-174.  As will soon become
    evident, plaintiff Gagan has not met his burden of proof with respect to four of the issue preclusion
28  elements which courts uniformly require.  Thus, the court need not become mired down in the "somewhat
    curious inconsistency[]" identified in In re Child.  See In re Child, 486 B.R. at 174.

> renew a judgment previously registered in Arizona.
> Based on the collection efforts undertaken by Gagan
> in this case, the 2010 trial court's determination that
> Gagan's 1995 Judgment was renewed by 'action thereon'
> cannot be sustained.

Resp. (Doc. 507) at 5:23-6:2; see also id., exh. C thereto (Doc. 507-3) at 4 (same).  The assumption that the issue was "submitted for determination" is based upon Monroe's argument to the Monroe Court "that the trial court erred on the merits . . . because collection efforts do not accomplish the renewal of a judgment by action under Arizona law.  See Monroe, 2011 WL 2555736, at *4, ¶ 14.  Furthermore, unquestionably the Arizona Court of Appeals is a "court of competent jurisdiction."  See In re Bailey, 2013 WL 1242727, at *5 (citations omitted).

Nonetheless, the plaintiff is unable to show that the issue of collection efforts as renewal was "determined" by the Monroe court --- a critical component of the "actually litigated" element of issue preclusion.  Plaintiff Gagan maintains that the Monroe court "addressed" that argument.  Resp. (Doc. 507) at 5:19.  While that may be so, as earlier discussed in connection with the Rooker - Feldman doctrine, the issue of whether collection efforts can renew a judgment under Arizona law was not "determined" in Monroe.  See discussion supra at 12-13.  Rather the issue "determined" therein was whether the state trial court properly gave preclusive effect to this court's prior finding that under Arizona law collection activities suffice to renew a judgment.  The Monroe court found that it did.   See Monroe, 2011 WL 2555736, at **4-6, ¶¶ 15-22.  Accordingly, plaintiff Gagan has not met his burden of establishing the first element of issue preclusion.

### 2.  *"Full and Fair Opportunity"*

Plaintiff Gagan made no effort at all to establish the second element of issue preclusion – whether, in Monroe, there was a full and fair opportunity to litigate the issue of whether collection activities suffice to renew a judgment under Arizona law.  Given the relatively scant record, and plaintiff Gagan's silence on the issue, the court declines to

speculate.  The court thus is compelled to find that plaintiff Gagan has not met his burden of proving the second issue preclusion element.

### 3.  *"Essential to the Decision"*

The party invoking issue preclusion also must demonstrate that "resolution" of the "actually litigated" issue was *essential* to the [prior] decision[.]"  See Hullett, 63 P.3d at 1035 (citation omitted) (emphasis added).  "If an issue was neither essential nor necessary to the prior judgment, such preclusion is inappropriate."  King v. Superior Court, 138 Ariz. 147, 150, 673 P.2d 787, 790 (1983) (en banc) (citations omitted). "Whether a ruling is essential must be determined on a case-by-case basis." Garcia v. Gen. Motors Corp., 195 Ariz. 510, 514, ¶ 10, 990 P.2d 1069, 1073 (App.1999).

Plaintiff Gagan recognizes that resolution of the actually litigated issue must be "essential to the [prior] decision[,]" yet his response is conspicuously silent on that element.  See Resp. (Doc. 507) at 7:4.  Perhaps that is because he would be hard pressed to make such an argument given that, as previously explained, whether or not collection activities suffice to renew a judgment under Arizona law was not essential or necessary to the Monroe decision.  See discussion supra at 12-13.  As the Rooker – Feldman discussion herein shows, the Monroe court's "comments" regarding Fidelity III "were not necessary or essential to [its] judgment" that the trial court properly gave preclusive effect to an earlier order of this court.  See Collins v. Miller & Miller, Ltd., 189 Ariz. 387, 395, 943 P.2d 747, 755 (Ct.App. 1997).  Put differently, in deciding whether the trial court properly gave preclusive effect to this court's 2006 order, it was not necessary or essential for the Monroe court to resolve the issue of whether in Arizona a judgment can be renewed based upon collection activities.  So, once again, plaintiff Gagan has not met his burden of proof.

### 4.  *"Valid and Final Decision on the Merits"*

The plaintiff contends that because "the judgment [in Monroe] was not appealed to the Arizona Supreme Court[,]" it "is final."  Resp. (Doc. 507) at 16-17.  Without more, however, that contention does not establish that Monroe was a "valid and final decision

1   on the merits" as to the issue herein:  whether Arizona law permits renewal of a judgment

2   based upon collection activities.  At the risk of repetition, that issue was not decided on

3   the merits in Monroe.  Plaintiff Gagan thus has not met his burden of proof as to the

4   fourth element of issue preclusion.

5                        ***5.  Common Identity of Parties***

6           It is undisputed that the parties in Monroe, Messrs. Gagan and Monroe, are also

7   the parties herein.  Therefore, the plaintiff has shown the requisite common identity of

8   parties, but this minimal showing is a far cry from what is necessary to invoke the

9   doctrine of issue preclusion.  Accordingly, because the plaintiff has established only one

10  of the five issue preclusion elements, he is not entitled to rely upon that doctrine to defeat

11  the defendant's motion to dismiss.  Issue preclusion is not the plaintiff's only opposition

12  argument, though.  He also argues that claim preclusion is a bar to this motion, an issue

13  which the court will address next.

14                       ***E.  "Claim Preclusion"***

15          Monroe, 2011 WL 2555736, is the basis for plaintiff Gagan's claim preclusion

16  argument as well.  Therefore, Arizona claim preclusion principles govern.  Douglass v.

17  Martin, 2012 WL 3890248, at *2 (D.Ariz. Sept. 7, 2012) (citing, *inter alia*, Marrese v.

18  Am. Acad. of Orthopaedic Surgeons, 470 U.S. 373, 380, 105 S.Ct. 1327, 84 L.Ed.2d 274

19  (1985)) ("State law governs the application of res judicata to state court judgments.")

20  Under Arizona law, there are "four general requirements for [claim preclusion]: (1) the

21  same claim was adjudicated previously, (2) by a 'judgment on the merits,' (3) issued by

22  'a court of competent jurisdiction,' (4) against the same parties or their privies."  TSYS

23  Acquiring Solutions, LLC v. Electronic Payment Systems, LLC, 2010 WL 4642112, at

24  *3 (D.Ariz. Nov. 9, 2010) (citing Hall v. Lalli, 194 Ariz. 54, ¶ 7, 977 P.2d 776, 779

25  (1999) (en banc)).  Plaintiff Gagan, as "[t]he party seeking to assert [claim preclusion]

26  bears the burden of proving that it applies." See Douglass, 2012 WL 3890248, at *2

27  (citing State Comp. Fund v. Yellow Cab Co. of Phoenix, 197 Ariz. 120, 3 P.3d 1040,

28  1044 (Ct.App.1999)); see also 18 C. Wright, A. Miller, & E. Cooper, Federal Practice

1  and Procedure, § 4405  n. 2.5 (2d ed. 2002) ("A party asserting preclusion must carry the

2  burden of establishing all necessary elements.)

3       Plaintiff Gagan has not met that burden.  The deficiencies in plaintiff's proof are

4  laid bare in his perfunctory treatment of claim preclusion:

5
6          As this Court noted in its October 2006 decision, Monroe
        continues to rehash his claim that Gagan's judgment is unenforceable.

7          The various decisions on those claims are final and Gagan and
        Monroe were both opposite each other in each instance.

8          Accordingly Defendant's claims are also barred by the doctrine
        of [claim preclusion].

9
10  Resp. (Doc. 507) at 8:3-6.  Plainly the foregoing does not demonstrate that all of the

11  necessary claim preclusion elements have been satisfied here.  Therefore, as with issue

12  preclusion, the court finds that plaintiff Gagan has not met his burden of showing that

13  claim preclusion bars consideration of the defendant's motion to dismiss.  See Karim-

14  Pahani v. Los Angeles Police Dep't, 839 F.2d 621, 627 n. 4 (9th Cir. 1988) (claim

15  preclusion argument "meritless" where the defendants did nothing to carry their burden

16  of proof so that it was "impossible to tell whether the prior suit preclude[d] [plaintiff's]

17  present claim[]").  Because plaintiff Gagan did not meet his burden of establishing either

18  issue or claim preclusion, there is no need to consider the defendant's alternative

19  argument that the intervening change in law exception to claim preclusion applies here.

20       ***F.  Merits***

21       Having found that none of plaintiff Gagan's opposition arguments are viable, the

22  court turns to the merits of this dismissal motion, which, tellingly, plaintiff Gagan did not

23  address.

24       Fed.R.Civ.P. 69(a)(1) provides in relevant part:

25          The procedure on execution—and in proceedings
         supplementary to and in aid of judgment or execution

26          —must accord with the procedure of the state where
        the court is located, but a federal statute governs to

27          the extent it applies.

28
Fed.R.Civ.P. 69(a)(1).  In light of the foregoing, and "[b]ecause '[t]here is no federal

statute specifically governing renewal of judgments[,]'" the court must look to Arizona's renewal statutes to determine whether plaintiff Gagan properly renewed his Arizona registered judgment.   See Kennedy-Burdick v. Czarnecki, 2013 WL 1046106, at *1 (D.Ariz. March 14, 2013) (quoting Fidelity V, 855 F.Supp.2d at 962); see also Fidelity II, 602 F.3d at 1123 ("The federal court applies state law, . . . , when renewing a judgment that has already been registered in that state.")

Relying upon the Ninth Circuit's unpublished memorandum in Fidelity IV, 402 Fed.Appx. 194, and the Arizona Supreme Court's Fidelity II decision, the defendant argues that because plaintiff Gagan did not renew his Arizona registered judgment in accordance with Arizona's renewal statutes, that judgment has expired and thus is unenforceable.[9]   The defendant further argues that the expiration of that judgment divested this court of jurisdiction, mandating dismissal.

As the Ninth Circuit recognized on April 26, 2010, there was "uncertainty" then as to whether the "broad reading of 'action,' arguably suggested by [A.R.S.] § 1-215,[10] . . .

---

[9]     That memorandum explicitly states that  it "is not appropriate for publication and "is not precedent except as provided by 9th Cir. R. 36-3."   Fidelity IV, 402 Fed.Appx. at 195, FN*.   Rule 36-3 provides that "[u]npublished dispositions and orders of this Court are not precedent, except when relevant under the doctrine of law of the case or rules of claim preclusion or issue preclusion."   Ninth Circuit Rule 36-3 (emphasis added).

The defendant realizes that Fidelity IV is an unpublished memorandum, and also recites Rule 36-3.   To avoid the plain caveat of Fidelity III, however, the defendant states that the holding therein "is relevant to issue or claim preclusion[,]" but he offers no explanation whatsoever.   See Mot. (Doc. 494) at 9:24, n. 2.   To the extent that the defendant might be asserting that Fidelity IV bars plaintiff Gagan from relitigating the collection by renewal argument based upon issue or claim preclusion, or both, the defendant, like the plaintiff, has not met his burden of proof.

One defect which is readily apparent is the defendant's failure to show that "there is a common identity of parties[]" between Fidelity IV and the present action – a critical element of issue preclusion.   See Hullett, 204 Ariz. at 298, 63 P.3d at 1035.   Likewise, the defendant also has not shown that the claim in Fidelity IV is "against the same parties or their privies[]" in this action.   See TSYS Acquiring Solutions, 2010 WL 4642112, at *3 (internal quotation marks and citation omitted).   For these reasons, the court heeds the Ninth Circuit's restrictions on the precedential value of Fidelity IV.   In other words, it will not, and indeed cannot, rely upon Fidelity III, in resolving this motion to dismiss.   That does not mean, however, that the defendant's dismissal argument is not a valid one.   It just means that instead of looking to the unpublished Fidelity IV case as the legal basis for this argument, the court will look to the Arizona Supreme Court's published opinion in Fidelity III.

[10]     A.R.S. § 1-215 defines an "'[a]ction' [to] include[] any matter or proceeding in a court, civil or criminal."   A.R.S. § 1-215(1).

might include collection activities[.]" <u>Fidelity II</u>, 602 F.3d at 1123 (footnote added).  The primary source of that uncertainty was an "unpublished and therefore not precedential" case from the Arizona Court of Appeals.  <u>See id.</u> at 1124.  Since then, however, the Arizona Supreme Court in <u>Fidelity III</u>, 225 Ariz. 307, entirely removed that uncertainty. It did so by negatively answering the question of "whether 'collection activities . . . taken within Arizona' serve to renew a judgment."  <u>Id.</u> at 312, ¶ 25.  As <u>Fidelity III</u> makes abundantly clear, renewal of a judgment in Arizona in accordance with A.R.S. §§ 12-1551 and 12-1611 requires a "common law action on a judgment[.]"  <u>See id.</u> at 311, ¶ 24.

    <u>Fidelity III</u> and its progeny compel a finding in this case that plaintiff Gagan's collection efforts through the years were not sufficient to renew the Arizona registered judgment.  Moreover, because plaintiff Gagan did not file a renewal affidavit, nor did he commence a common law action on the Arizona registered judgment, that judgment expired on March 31, 2000 - five years after it was "recorded" with the Maricopa County Recorder.  <u>See</u> Mot. (Doc. 494), exh. 1 thereto (Doc. 494-1) at 2.  The Arizona registered judgment thus became unenforceable on that date.[11]  <u>See</u> <u>Kennedy-Burdick</u>, 2013 WL 1046101, at *1 ("[I]n Arizona, a judgment becomes unenforceable after five years from the date of entry unless action is taken to renew it.") (quoting <u>Fidelity [V]</u>, 855 F.Supp.2d at 963 quoting, in turn, <u>In re Smith</u>, 209 Ariz. 343, 101 P.3d 637 (2004); and (citing <u>Crye v. Edwards</u>, 178 Ariz. 327, 328, 873 P.2d 665, 666 (App.1993) ("monetary judgments expire in Arizona if not renewed every five years")); <u>see also</u> <u>Fidelity III</u>, 225 Ariz. at 311, ¶ 32 ("When a judgment creditor fails to utilize either [affidavit by renewal or common law action on the judgment], its resultant inability to enforce the original judgment in Arizona is compelled by law.")

    Based upon the foregoing, the court finds that during the period the Arizona registered judgment was enforceable under Arizona law, this court had the "inherent powers" or jurisdiction to enforce that judgment.  <u>See</u> <u>Peacock v. Thomas</u>, 516 U.S. 349,

---

[11]    After the expiration of the Arizona registered judgment, on October 25, 2000, plaintiff Gagan did purport to record that judgment with the Maricopa County Recorder.  <u>See</u> Mot., exh. 3 thereto (Doc. 494-3) at 2.  Of course, that belated re-recording does not change the fact of expiration.

356, 116 S.Ct. 862, 133 L.Ed.2d 817 (1996); cf. Riggs v. Johnson County, 73 U.S. 166, 171, 18 L.Ed. 768, 6 Wall. 166 (1867) ("[T]he jurisdiction of a court is not exhausted by the rendition of the judgment, but continues until that judgment shall be satisfied[.]") Conversely, once the Arizona registered judgment became unenforceable, this court lost its enforcement powers and necessarily its subject matter jurisdiction.  For all of the reasons discussion herein, the court thus grants defendant Monroe's motion to dismiss for lack of subject matter jurisdiction.

## II.  Attorneys' Fees and Costs

As part of his motion, pursuant to 28 U.S.C. § 1332(b), the defendant is seeking to recover his attorneys' fees and costs incurred since March 30, 2000 -- the date he claims the subject lien expired.  In a diversity jurisdiction action, "where the plaintiff who files the case originally in the Federal courts is finally adjudged to be entitled to recover less than the sum or value of $75,000, . . . the district court may deny costs to the plaintiff and, in addition, may impose costs on the plaintiff."  28 U.S.C. § 1332(b).  Defendant Monroe wrongly assumes that just because he did not recover anything in this action, he is entitled to his attorneys' fees and costs under that statute.

Even a quick perusal of section 1332(b) shows that it does not apply to defendant Monroe's situation.  Although he did not recover anything in this action, the defendant conveniently overlooks the fact that this is not an action based upon diversity of citizenship.  This is an action to enforce a judgment registered pursuant to section 1963.  Moreover, as already explained, the record is void of any proof to establish diversity of citizenship jurisdiction.  Additionally, it is patently obvious that defendant Monroe is not a "plaintiff" nor did he "file[] [a] case" in this federal court.  See 28 U.S.C. § 1332(b).  Finally, section 1332(b) is clear on its face; only costs may be awarded thereunder, not attorneys' fees, as defendant Monroe also is seeking.  Consequently, the court denies defendant Monroe's motion insofar as he is seeking to recover his attorneys' fees and costs incurred since March 30, 2000, pursuant to 28 U.S.C. § 1332(b).

Accordingly, the court hereby **ORDERS** that:

1    (1) "Defendant James Monroe's Motion to Dismiss for Lack of Jurisdiction" (Doc.

2    494) is  **GRANTED**; but

3    (2) that Motion is **DENIED** to the extent that Defendant James Monroe is seeking

4    attorneys' fees and costs pursuant to 28 U.S.C. § 1332(b).

5    Dated this 17th day of  March, 2014.

_____
Robert C. Broomfield
Senior United States District Judge